Mary Jane SIMS, Plaintiff-Appellant,

v.

Max CLELAND, Administrator of Veterans Affairs, Defendant-Appellee.

No. 84–3913.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 10, 1986.

Decided March 13, 1987.

John Cary Sims, Lead Counsel (argued), William B. Schultz, Washington, D.C., for plaintiff-appellant.

Alan J. Ross (argued), Asst. U.S. Atty., Cleveland, Ohio, for defendant-appellee.

Before MERRITT, JONES and NELSON, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Sims appeals from the district court's judgment in favor of defendant on her claims that she was not promoted to the position of Veterans Administration (VA) Assistant District Counsel in Cleveland in 1979 because of sex and age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), and the Age Discrimination in Employment Act, 29 U.S.C. § 633a (1982). The case was tried to the bench over five days, and the district court ultimately found no intentional discrimination in the employment decision. Sims challenges that conclusion as resulting from an erroneous application of the legal standards as to evidence of "pretext" under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and their progeny. For the reasons set forth below, we affirm the judgment of the district court.

Sims, a white female, was born on October 25, 1918. She graduated first in her class from Fordham University Law School in 1942. In November of that year, she joined the Office of Price Administration as an attorney and continued with the agency until it was phased out after World War II in 1947. Sims did not work again as an attorney for the next 20 years. From 1961 to 1967, she worked as an elementary school teacher.

On August 14, 1967, Sims was hired as an attorney in the VA Office of the Chief Attorney in Cleveland in a grade GS–9 position. She received no credit in grade level or promotion eligibility for her prior experience as an attorney for the Office of Price Administration. Sims' job title when she was hired by the VA in 1967 was that of General Attorney (Veterans).

A VA employee with Sims' job title in 1967 was required to do investigative work outside of the office. However, Sims' supervisor at that time, Wayne Kniffin, did not require her to perform such work. Rather, at Kniffin's direction, Sims acted primarily as a consulting attorney in the

office and was only required to do a minimum amount of work in the field, as compared to the other attorneys in the office.

Sims was promoted from a grade GS–9 to a grade GS–11 on September 8, 1968. However, because her makeshift position as a "consulting attorney" was unauthorized, in December 1969 Sims was forced to transfer from the Office of Chief Attorney to the Adjudication Division of the VA. Although her salary was not decreased, Sims' grade was decreased from a GS–11 to a GS–9–9. In 1975, a vacancy occurred in the District Counsel's Office (the successor to the Office of Chief Attorney), and Sims was hired into the position at a grade GS–12. One year later she was promoted to a GS–13.

In 1976, when the District Counsel, Paul Diehl, was notified of a seminar for VA attorneys who specialized in medical malpractice, he sent a young male lawyer, Arthur Kraut. In 1978, Diehl again sent Kraut to a seminar especially for the medical malpractice lawyers in the VA District Counsel Offices. Sims protested Kraut's attendance at the second malpractice seminar and subsequently filed a formal sex and age discrimination complaint.

In early 1979, a vacancy occurred in the Assistant District Counsel (ADC) position in the Cleveland Office. Five attorneys from the office, including Sims, applied for this position. Due in part to the pending discrimination complaint, the General Counsel's Office in Washington, D.C., sent Joseph Lindekugel, Director of Management Operations, to Cleveland in February 1979 to interview the applicants and to talk with and solicit the views of John Brink, the retiring ADC, and Paul Diehl, who coincidentally was also retiring. In general, both men stated that all five applicants were qualified for the position, but recommended that Arthur Kraut was most qualified and should receive the promotion.

Harvey Wax, the ADC in San Francisco who was being considered for the as-yet-unannounced vacancy in the Cleveland District Counsel position, also spoke to the five candidates briefly during a one-day trip to Cleveland in January 1979. Mr. Wax concluded that he could work with any of the candidates as his ADC. Both Lindekugel and Wax reported back to Robert Coy, Deputy General Counsel for the VA, with their observations. Lindekugel provided Coy with a written summary of his recommendations, a memorandum summarizing each applicant's qualifications, and a copy of each candidate's application. Kraut was strongly recommended. In March 1979, Coy recommended the promotion of Kraut to the ADC position. This recommendation was adopted by Guy McMichael, the General Counsel to the VA.

Following a bench trial, the district court issued a 16–page opinion holding that Sims had not been discriminated against. The district court found as factual matters that both Sims and Kraut were "capable and hard-working" attorneys and "qualified" for the ADC position. It also found that Kraut was ultimately promoted over Sims because of Kraut's extraordinary qualifications and performance. The court ultimately concluded that "[t]he sex of the candidates was not a *determining* factor [and] Sims' age was not a factor in the choice of Arthur Kraut for assistant district counsel in 1979." App. 18–19 (emphasis added).

## I.

The primary legal issues on appeal are: (1) what constitutes a pretextual reason for an employment action under federal discrimination law, and (2) whether the district court erred in failing to find pretext on the basis of its subsidiary findings of fact. The first prong of appellant's argument requires us to review the early precedent on pretext and apply it to the case at bar. A plaintiff can establish that the legitimate, nondiscriminatory reason for the employment decision articulated by the defendant employer is pretextual in one of two ways. The first is to establish by a preponderance of the evidence that the discriminatory reason was the true reason motivating the employer's conduct. Alternatively, the plaintiff can prove pretext by showing that the proffered legitimate reason was false. *See Burdine,* 450 U.S. at

256, 101 S.Ct. at 1095; *United States Postal Service v. Aikens*, 460 U.S. 711, 717–18, 103 S.Ct. 1478, 1482–83, 75 L.Ed.2d 403 (1983) (Blackmun, J., concurring). In the case at bar, Sims argues that the district court's finding that one of the two alternative and independent legitimate, nondiscriminatory reasons articulated by the VA was false necessarily requires a finding of pretext. We disagree.

■ The district court clearly found in its opinion that the VA had advanced two alternative, nondiscriminatory reasons for its promotion decision: (1) that Sims was not qualified due to her deficiency in the medical malpractice area; and (2) that the VA believed in good faith that Kraut was more qualified for the position due to his attitude and work habits. The first reason was rejected by the district court when it found that both Sims and Kraut were qualified for the promotion and that "Kraut had no greater qualifications than Sims." Nevertheless, it accepted the alternative reason that the VA's good faith belief that Kraut was subjectively more qualified was the true legitimate, nondiscriminatory reason for his promotion over Sims. The question then, under *Burdine* and *Aikens*, is whether the falsity of one alternative and independent nondiscriminatory reason mandates a finding either that the false articulated reason or all articulated reasons are pretexts for discriminatory conduct. We think that this question must be answered in the negative.

■ In the classic single-motive discrimination suit, the plaintiff seeks to prove that he or she has been denied an equal employment opportunity for an impermissible, discriminatory reason. Assuming the *McDonnell Douglas* burden-shifting analysis is applied, the defendant employer will attempt to rebut the plaintiff's prima facie case by articulating a legitimate, nondiscriminatory reason for the challenged employment decision—for example, that the person ultimately selected was more subjectively qualified than the plaintiff. If this is the only legitimate reason that the defendant propounds, and it is proven false by the plaintiff, then the court is left with nothing but circumstantial inferences that the employment decision was based upon considerations impermissible under the anti-discrimination laws. In that simple single-motive case, proof that the articulated reason was false, and therefore not the true reason for the employment decision, requires entry of judgment for the plaintiff. *Aikens*, 460 U.S. at 718, 103 S.Ct. at 1483 (Blackmun, J., concurring).

■ It must be recognized, however, that it is not merely the falsity or incorrectness of the articulated reason that gives rise to the conclusion of pretext. Rather, it is the resulting absence of legitimate explanation for the suspect employment decision that warrants the finding of discrimination. Where two or more alternative and independent legitimate, nondiscriminatory reasons are articulated by the defendant employer, the falsity or incorrectness of one may not impeach the credibility of the remaining articulated reason(s). The case at bar presents us with just such a situation. The district court's rejection of the claim that Sims was unqualified for the promotion due to her alleged inability to handle medical malpractice cases does not impugn the VA's alternative nondiscriminatory reason that Kraut was promoted due to his "hard work and dedication." Accordingly, we hold that the district court properly applied the law in failing to find pretext.

## II.

The second argument on appeal is that the nature and extent of the evidence offered at trial, interpreted in light of the proper legal analysis, clearly showed that the VA's decision to promote Kraut over Sims was most likely motivated by age and sex-based discriminatory animus. We perceive this argument to be primarily an invitation to review and restate the controlling evidentiary principles, and only secondarily a challenge to the sufficiency of the evidence.

Sims maintains that the district court's opinion failed to reflect the high degree of scrutiny required, given the nature of her

claim. This court has often held that where a challenged employment decision was based on subjective evaluations of the applicants, and the evaluators themselves were not members of the plaintiff's protected class, the employment decision is subject to very close scrutiny. *See, e.g., Grano v. Department of Development*, 699 F.2d 836, 837 (6th Cir.1983) (per curiam); *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 93 (6th Cir.1982) (per curiam). "While such procedures are not *per se* violative of Title VII, they do provide a ready mechanism for discrimination, permitting ... prejudice to affect and often control promotion and hiring decisions." *Rowe*, 690 F.2d at 93 (citation omitted). While it would be desirable for district courts specifically to address such matters in their opinions, this court has never held that the failure to do so requires reversal. We think that the instant record provides an ample basis from which to conclude that the district court did in fact consider the subjective nature of the evaluations. Many of the evaluators testified at trial, and the evaluations themselves were based, directly or indirectly, on past work performance. Both factors are indicia of the reliability of the district court's ultimate conclusion that the subjective reasons offered in support of the employment decision were credible.

Sims also maintains that she offered an abundance of direct evidence of anti-female animus existing in the VA, as well as statistical proof, and that this evidence established that the VA's articulated legitimate reasons for the promotion decision were pretextual. She relies on the language of this court in *EEOC v. Maxwell Co.*, 726 F.2d 282, 283–84 (6th Cir.1984) (per curiam), that if "the District Court finds evidence of anti-female animus, then the burden of proving pretext is significantly altered." The *Maxwell* court did not explain exactly how the burden of proving pretext would be altered in such situations because the case was remanded for explicit findings on the existence of sex-based animus. *Id.* at 283. By contrast, the district court's opinion in the instant case discussed at length Sims' offers of evidence of discriminatory treatment and/or animus and con-cluded that she had not established by a preponderance of the evidence that discriminatory reasons motivated the challenged employment decision.

 Because this claim of disparate treatment was tried pursuant to the *McDonnell Douglas/Burdine* formula, the district court was correct in its assumption that the burden of persuasion rests always with the plaintiff. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. In her attempts to prove pretext under this evidentiary formula, a plaintiff is free to offer direct or statistical evidence tending to establish sex-based animus. Depending upon the probative value of that evidence, the district court may accord it substantial weight or no weight at all. We reject appellant's suggestion that the introduction of *any* direct evidence of sex-based animus, no matter how probative, shifts the burden of persuasion from the plaintiff to the defendant. That is not the holding of *Burdine*, and we do not believe it to be the holding of the courts in *Lujan v. Franklin County Bd. of Educ.*, 766 F.2d 917, 928–29 & n. 16 (6th Cir.1985), or *Bell v. Birmingham Linen Serv.*, 715 F.2d 1552, 1556–57 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). We agree with the district court that the direct evidence of discriminatory animus and the statistical evidence did not establish pretext as a matter of law and did not shift the burden of persuasion to the defendant.

Turning finally to the ultimate factual question of discrimination *vel non*, we hold that the district court's findings were not clearly erroneous. Accordingly, the judgment below is AFFIRMED.