95 F.3d 1152
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Nona J. HARTLEY, Plaintiff-Appellant,
v.
CSX TRANSPORTATION, INC., Defendant-Appellee.
 No. 94-4257.
 United States Court of Appeals, Sixth Circuit.
 Aug. 28, 1996.
 
 Before: KEITH, JONES and SILER, Circuit Judges.
 SILER, Circuit Judge.
 
 
 1
 Plaintiff, Nona J. Hartley, appeals the grant of summary judgment to the defendant, CSX Transportation, Inc. ("CSXT"), in this employment sex discrimination action. For the reasons stated herein, we affirm the decision of the district court.
 
 I.
 
 2
 Hartley worked for CSXT in Willard, Ohio for fifteen years as a "brakeperson." During that period, she was warned or disciplined in connection with several incidents.[1] Larry Weaver also worked for fifteen years at the Willard facility. He served as "train master" for four years during that period. Under CSXT policy, promotion from brakeperson to "yard foreman" can be achieved at the Willard facility after passing an oral examination administered by a train master. Hartley testified that she had taken this test "about six times" and was deemed to have failed each time.
 
 
 3
 After the last of these tests, Hartley filed a charge with the Ohio Civil Rights Commission ("OCRC") and with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that she had suffered sex discrimination. The OCRC found that "the evidence does not substantiate that [Hartley] was denied promotion because of her sex." The EEOC found "there was no evidence that CSX discriminated against [Hartley] on the basis of sex." After Hartley filed this suit pursuant to 42 U.S.C. § 2000e, CSXT granted her request to transfer to a CSXT facility in Walbridge, Ohio. After working there three days, she was promoted to yard foreman without an oral examination. Hartley was working in the yard foreman position at Walbridge when this action commenced.
 
 
 4
 The district court granted summary judgment to CSXT, finding that Hartley had established a prima facie case of discrimination but that she had not presented evidence that showed pretext in CSXT's proffered nondiscriminatory bases.
 
 II.
 
 5
 This court reviews an order granting summary judgment de novo. City Mgmt. Corp. v. United States Chemical Co., 43 F.3d 244, 250 (6th Cir.1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 800 (6th Cir.1994).
 
 III.
 
 6
 A Title VII plaintiff bears the burden of establishing a prima facie case of discrimination with evidence demonstrating intentional discrimination or with evidence which creates an inference of discrimination. Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). To create an inference of discrimination a Title VII plaintiff must demonstrate that he or she (i) belonged to a protected class; (ii) applied for a job for which he or she was qualified and for which the employer was taking applications; (iii) was rejected; and (iv) was denied a position that stayed open or was filled by a person not in the protected class. McDonnell Douglas, 411 U.S. at 802; Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1246 (6th Cir.1995). Each factor under the McDonnell Douglas framework must be established by a preponderance of the evidence in order to create an inference of discrimination and thus make out a prima facie case. 42 U.S.C. § 2000e 2(a)(1); St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742 (1993). Failure to prove an essential element of a plaintiff's case "necessarily renders all other facts immaterial." Celotex v. Catrett, 477 U.S. 317, 323 (1986).
 
 
 7
 It is undisputed that Hartley is female, applied for the yard foreman position, was rejected, and the position was filled by males. The district court found that Hartley made out a prima facie case of discrimination under the McDonnell Douglas framework because "the mere fact that [she] was found to meet the requirements for the position at Walbridge ... [demonstrates] that she was qualified for a position bearing the same title at the Willard yard." That Hartley was promoted to yard foreman in Walbridge after she first complained of discrimination is evidence which, when taken in the light most favorable to Hartley, shows she was qualified for the position of yard foreman at Willard. She has established a prima facie case of sex discrimination.
 
 IV.
 
 8
 Once a Title VII plaintiff has established a prima facie case, the burden shifts to the defendant to articulate legitimate nondiscriminatory reasons for its action. McDonnell Douglas, 411 U.S. at 802. Weaver and Tony Tuchek stated that Hartley was unfamiliar with operating rules during her last test and that she answered incorrectly when asked to apply those rules to hypothetical situations.[2] They stated that the decision not to promote Hartley was based on these deficiencies and on her safety and disciplinary records. Hartley testified that test administrators stated, "[W]e've got too many trains to pull in and we don't want to see you fired...." Weaver and Tuchek stated that Hartley's tests were "no different, in general form or content" to tests administered to male candidates for the Willard yard foreman position. They also stated that Hartley was told she had failed the last of these examinations because she was unfamiliar with the operating rules and because of her poor performance record.[3] This is evidence of legitimate nondiscriminatory reasons for CSXT's decision not to promote Hartley.
 
 V.
 
 9
 Once a Title VII defendant meets its burden of articulating legitimate nondiscriminatory reasons for its action, the plaintiff must then "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).
 
 
 10
 The content of these tests was not prescribed by CSXT. Hartley testified that she does not remember the substance of those tests except that Larry Weaver asked, "What would you do if them guys wouldn't work for you?" Weaver claims that this question was asked in a general sense, i.e., he claimed he was inquiring as to what actions she would take when faced with insubordination. Hartley admits that no such question was asked in her last oral examination. As the district court noted, "[a]lthough viewed most favorably to the plaintiff, this question could be deemed to manifest discriminatory animus, that fact, without more, is not sufficient to meet the plaintiff's burden on the issue of pretext."
 
 
 11
 Hartley complains that the tests were difficult because she was asked about the content of specifically numbered CSXT operating rules. She contends that her correct answer to a question was met with disbelief. While these tests may have been difficult and expectations of Hartley may have been low, she has presented no evidence that these tests were more difficult than those administered to males.[4] Moreover, she offers no evidence which rebuts CSXT's claim, supported by the affidavits of Weaver and Tuchek, in regard to her lack of familiarity with CSXT operating rules, incorrect responses as to hypothetical procedures, and incorrect answers on the tests administered. Instead, Hartley contends that these reasons are pretextual because she was promoted at Walbridge with, presumably, the same lack of familiarity. Hartley argues, "If the test centered on the rules, and the rules are uniform throughout the system, the differences between Willard and Walbridge for testing purposes is irrelevant." Tuchek testified that Hartley failed the test he administered because she was not familiar with the rules and "had no idea how she should handle" dangerous situations presented to her hypothetically.[5] It was on this basis, as well as a lack of familiarity with operating rules, that Tuchek decided Hartley should not be promoted.
 
 
 12
 Hartley offers no evidence which rebuts CSXT's claim, supported by the affidavits of Weaver and Tuchek, in regard to her safety record. Instead she offers evidence showing that her husband had a bad safety record and was promoted at Walbridge.[6] This evidence bolsters CSXT's contention that Hartley's promotion at Walbridge shows nothing in regard to its motives or Hartley's qualification for the Willard yard foreman position: it indicates that those with poor safety records may be promoted to yard foreman at Walbridge and not at Willard, regardless of their gender. Hartley has presented no evidence that she was treated differently than male applicants and has presented no evidence that CSXT's proffered reasons for its decision were pretextual. Therefore, Hartley failed to show that discrimination was a determinative factor in CSXT's failure to promote her. There are no genuine issues of material fact and CSXT is entitled to judgment as a matter of law.
 
 
 13
 AFFIRMED.
 
 
 14
 NATHANIEL R. JONES, Circuit Judge, concurring, joined by KEITH, Circuit Judge.
 
 
 15
 I write separately in this matter because I am deeply troubled by the subjective nature of the promotion process utilized by CSX. In enacting Title VII, Congress intended, inter alia, to remove from the world of employment "artificial, arbitrary, and unnecessary barriers" based on racial or otherwise impermissible discrimination. Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971). More specifically, in Griggs, the Supreme Court directed that "[u]nder the Act, practices, procedures, or tests, neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices." Id. at 430.
 
 
 16
 In keeping with this mandate, this court has closely scrutinized subjective employment selection procedures in which the decisionmakers are not members of the plaintiff's protected class. See, e.g., Sims v. Cleland, 813 F.2d 790, 794 (6th Cir.1987). While subjective selection procedures are not illegal per se, Grano v. Department of Dev., 699 F.2d 836, 837 (6th Cir.1983), they have been found to "provide a ready mechanism for discrimination, permitting ... prejudice to affect and often control promotion and hiring decisions." Rowe v. Cleveland Pneumatic Co., 690 F.2d 88, 93 (6th Cir.1982) (per curiam); see also Black Law Enforcement Officers Ass'n v. City of Akron, 824 F.2d 475, 479-80 (6th Cir.1987) (subjective appraisal procedures found to have been manipulated). Close scrutiny enables the court to gauge the trustworthiness of the defendant's articulated subjective reasons, as well as safeguard the plaintiff's "full and fair opportunity to demonstrate pretext." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). This standard of scrutiny requires that we carefully examine the methods used to evaluate the applicant's ability to perform the duties of the job being sought.
 
 
 17
 The record demonstrates that the yard foreman promotion examinations given to Hartley consisted solely of subjective questions composed and orally presented by top Willard yard supervisory personnel, each of whom was male. Moreover, the examinations were given without any standardized components, written or oral; without a neutral scoring methodology; and, without any tangible recordkeeping of questions, answers, deliberations, test scores, or any indications of examiner rationale for decisions. Cf. Uniform Guidelines on Employee Selection Procedures, 41 CFR § 60-3.5(E) (1995) ("Selection procedures should be administered and scored under standardized conditions."). These lax examination standards and non-existent data retention procedures certainly provided convenient and superficially neutral means, as well as deplorably fertile grounds, within which the examiners could disguise their personal biases or their desire to conform to the biases of the company or of co-workers. See Developments-Title VII, 84 HARV.L.REV. 1109, 1123 (1971). Hartley argues that this lack of any standards in, or recordkeeping of, prior yard foreman examinations, or of her own examinations, so significantly encumbered her factfinding ability that a "full and fair opportunity to demonstrate pretext" was "impossible." Rarely will an employer make overtly discriminatory pronouncements, whether in an interview, examination, review, or otherwise. Yet, the aura of secrecy surrounding these subjective examinations certainly raises a red flag of potential difficulties. Nevertheless, insufficient evidence was presented in this case for a showing of pretext.
 
 
 18
 As support for her claims, Hartley provided only the affidavits of herself and her husband and the fact that she became a yard foreman at Walbridge. She did not depose Tony Tuchek, her 1992 examiner, to recreate as best as possible a journal of the examination. She also failed to present any circumstantial evidence of discriminatory events or conditions at Willard, or CSX's operations generally, from which an inference of bias in the examinations could be drawn. In light of the several strongly articulated subjective reasons CSX presented for its decision not to promote Hartley, albeit decisions made under somewhat suspicious and certainly less than ideal practices, Hartley's presentations were insufficient to carry her burden of persuasion. Therefore, I concur in the decision but remain concerned about the use of subjective processes in employment matters.
 
 
 
 [1]
 These incidents occurred between 1978 and 1991. Hartley was given several days of "overhead suspension" and put on probationary employment status for months at a time. Hartley was found partially responsible for misguided trains and damage to railway cars caused by violations of CSXT operating rules. She was disciplined for "dismounting a locomotive incorrectly" and was apparently involved in a train derailment
 
 
 [2]
 Larry Weaver was present when Hartley was administered tests by train master Rich Miller in 1991 and train master Tony Tuchek in 1992
 
 
 [3]
 Hartley was provided copies of those rules and told that she could take the test again after she had an opportunity to study them
 
 
 [4]
 Hartley claims that her husband and Ed Jones were promoted to yard foreman positions in Walbridge despite answering test questions incorrectly and poor safety records. Weaver, Miller, and Tuchek stated that because CSXT's train yards are all necessarily different, the tests administered to yard foreman candidates are different at each yard
 
 
 [5]
 Tuchek stated,
 In one situation, involving an operation within the [Willard] yard, Ms. Hartley was not aware that she was required to perform certain tasks. The actions she thought she should have taken would actually have rendered her liable for a fine by the Federal Railway Administration and possible dismissal from the Railroad.... [In another situation,] her suggested response would almost certainly have resulted in a head-on collision, probably causing property damage and perhaps personal injury.
 
 
 [6]
 This evidence became part of the record upon the district court's review of the case after Hartley's motion for reconsideration. Hartley filed affidavits by her and her husband with that motion. The district court noted that "the plaintiff's motion should be overruled on the basis that it fails to present new evidence that could not have been presented earlier." The district court reconsidered the case with these new affidavits. CSXT contends that this is reversible error
 [T]he law of the case doctrine dictates that issues, once decided, should be reopened only in limited circumstances, e.g., where there is "substantially different evidence raised on subsequent trial; a subsequent contrary view of the law by the controlling authority; or a clearly erroneous decision which would work a manifest injustice."
 United States v. Moored, 38 F.3d 1419, 1421 (6th Cir.1994) (quoting Petition of United States Steel Corp., 479 F.2d 489, 494 (6th Cir.), cert. denied, 414 U.S. 859 (1973)) (other citations omitted). This standard clearly was not met but, as the affidavits considered were of little, if any, evidentiary value, it does not appear that the district court abused its discretion in this regard.