NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1162n.06

No. 11-4211

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Nov 08, 2012*

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CHYRIANNE H. JONES, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | C O U R T   F O R   T H E |
| v. | ) | SOUTHERN DISTRICT OF |
| | ) | OHIO |
| ST. JUDE MEDICAL S.C., INC., c/o CT | ) | |
| Corporation System; MICHAEL MOORE, | ) | O P I N I O N |
| | ) | |
| Defendants-Appellees. | ) | |
| | ) | |

BEFORE: MERRITT, McKEAGUE, STRANCH, Circuit Judges.

**McKeague, Circuit Judge.** Plaintiff-appellant, Chyrianne H. Jones, appeals the district court's grant of summary judgment in favor of the defendants, St. Jude Medical S.C., Inc., and Michael Moore. Jones contends that the defendants unlawfully retaliated against her for her engagement in protected activities, in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-3(a), 42 U.S.C. § 1981, and Ohio Revised Code Chapter 4112. The district court granted summary judgment in favor of the defendants on the retaliation claims finding that Jones failed to make a prima facie case. Additionally, the court found that the defendants were entitled to summary judgment even if Jones had made a prima facie case because Jones failed to rebut the defendants' proffered nonpretextual bases for her termination. We affirm the judgment of

the district court and hold that Jones failed to rebut one of St. Jude's proffered nonpretextual reasons for her termination.

## BACKGROUND

St. Jude is a Minnesota corporation that sells medical devices to hospitals and physicians. St. Jude's medical products include cardiac rhythm management devices such as pacemakers (low-voltage devices) and defibrillators (high-voltage devices). St. Jude directly employs sales representatives throughout the United States to sell these items to hospitals and physicians. However, prior to February 2007, St. Jude contracted with an independent entity, Ohio Pacesetter Association, to sell St. Jude products in the Columbus, Ohio, region.

Jones is an African-American female who worked for medical-device providers from March 2003 to December 2009. From March 2003 to July 2005, Jones worked for a St. Jude competitor, Medtronic, as a device-check specialist. In July 2005, St. Jude hired Jones as a cardiac-rhythm-management sales representative in St. Jude's Jacksonville, Florida, office. While in the Jacksonville office, Jones serviced one doctor and earned more than $300,000 a year servicing this account. Her performance in the account exceeded St. Jude's expectations.

In 2006, Jones spoke with Lou Major, who was the new St. Jude Regional Sales Manager for the Columbus region. Major mentioned that St. Jude was planning to implement a direct sales force in the Columbus region by buying out Pacesetter. Jones subsequently applied for a position as a sales representative in the Columbus office.

In 2007, Jones was offered a position in Columbus, which she accepted despite being offered a low guarantee.[1] She began work on July 9, 2007. She was assigned a primary territory consisting of four electrophysiologists at Riverside Methodist Hospital, a number of smaller low-voltage accounts, and an additional electrophysiologist, Dr. Noble. Riverside, The Ohio State University, and Mount Carmel Health System are the flagship accounts of St. Jude's Columbus office. Three sales representatives shared Ohio State, while Jones and another sales representative shared Riverside. Electrophysiologist accounts are the most desirable accounts for cardiac-rhythm-management sales representatives because only electrophysiologists can install high-voltage devices, which generate higher commissions.

On January 14, 2008, Fred Suppes, Major's replacement as regional sales manager, notified Jones via email that Riverside would be removed from her accounts effective January 28. The email also stated that she would be contacted in 2-3 weeks about the plan moving forward. Michael Moore, who was the area vice president of sales, and Suppes both stated in depositions that the other was responsible for the decision to remove the Riverside account from Jones. On January 28, 2008, Jones lost 80% of her high-voltage device implanters as a result of her removal. St. Jude never replaced the accounts.

---

[1]"A guarantee is a regular rate of pay paid to a sales representative to provide him or her a guaranteed income during a set period while the sales representative is either establishing relationships in the sales territory or serving a non-competition period." (R. 86, Dist. Ct. Op. & Order at 3, Page ID # 2140.)

No. 11-4211
*Jones v. St. Jude Medical, S.C.*

## A. Performance Improvement Plan & Termination

According to Jones, she began opposing what she believed to be unlawful employment practices in an email dated January 15, 2008 and continued, from that date forward, to oppose these allegedly unlawful employment practices through emails sent to various St. Jude employees and ultimately through the present litigation. She also states that throughout the period of her employment in St. Jude's Columbus office she was given less favorable treatment than her male colleagues, and particularly, her white male colleagues. She states that because she opposed St. Jude's unlawful employment practices, St. Jude began taking actions that ultimately resulted in her placement on a performance improvement plan in August 2009 and her termination in December 2009. These actions included St. Jude removing Jones from the Riverside account in January 2008; St. Jude failing to give her new accounts to replace her old ones in January and February 2008, while giving her male colleagues replacement accounts after their primary accounts were removed; St. Jude making up reasons in January and February 2008 for her removal from the Riverside account; St. Jude not giving her adequate technical-sales-specialist[2] support throughout the latter months of 2008 and early months of 2009; St. Jude removing Dr. Noble from her accounts in June 2009; St. Jude doctoring sales numbers to justify her removal from the Riverside account and to downgrade her 2008 performance appraisal in April 2009; St. Jude placing her on performance improvement plan because of her low performance appraisal, in August 2009; and St. Jude arbitrarily setting the performance improvement plan's sales quota so that she was set up to fail.

---

[2]A technical sales specialist assists sales representatives in servicing accounts and clinics, and providing follow ups.

Jones failed to meet the sales quota set forth in her performance improvement plan, and in December 2009, Moore recommended Jones be terminated for that reason. On December 17, 2009, Jones was terminated based on Moore's recommendation. According to Jones, St. Jude's actions establish a chain of events that begin with her engaging in protected activities and end with her termination. For purposes of this opinion, we assume that Jones could prove a *prima facie* case that St. Jude terminated her because she engaged in protected activities.

## B. Recordings & Termination

After being removed from the Riverside account in January 2008, Jones recorded conversations with Heather Connelly (the electrophysiology manager at Riverside), several doctors, and employees of St. Jude. None of these people knew that the conversations were being recorded. Jones made the recordings to document what she believed to be mischaracterizations and lies made by Moore and Suppes, and to create evidence for a possible lawsuit. Recording conversations without the other conversant's approval violated St. Jude policy. At some point, Jones discovered that making these recordings violated company policy; yet she continued to record conversations thereafter. Jones informed St. Jude of the recordings in May 2009.

St. Jude received these recordings through the discovery process in October 2009. St. Jude's counsel gave the tapes to John Grubiak, Senior Vice President for St. Jude's East Sales Division, which included Columbus. Grubiak reviewed the recordings over the next two months. His review suggested that the people Jones spoke with did not know that they were being recorded and that Jones painted St. Jude in a poor light. Indeed, one physician stated that he would be less likely to use St. Jude products in the future because of the conversation. Further, one of the recordings

captured a St. Jude human resources manager telling Jones not to involve customers in internal St. Jude business. Grubiak concluded that Jones had disregarded the human resources manager's directive. In light of what he heard and his conclusion that Jones was disloyal to St. Jude, Grubiak decided Jones should be terminated. He communicated this to human resources in December 2009. Grubiak was unaware of any employee who had violated the recording policy and had not been fired for the violation.

## PROCEDURAL HISTORY

Jones initiated this action on November 6, 2008. In her second amended complaint, she alleged retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-3(a), 42 U.S.C. § 1981, and Ohio Revised Code Chapter 4112. She also brought claims of discrimination based on race, color, and gender under Title VII, 42 U.S.C. § 1981, and Ohio Revised Code Chapter 4112; a claim under the Equal Pay Act under 29 U.S.C. § 206(d); and a claim of wage discrimination under Ohio Revised Code § 4111.17. On December 30, 2010, defendants filed a motion for summary judgment in the district court, seeking judgment in their favor on all claims. In her memo opposing summary judgment, Jones also alleged retaliatory hostile work environment in violation of Title VII and the Ohio Civil Rights Act. On September 29, 2011, the district court granted the motion for summary judgment on all claims. Judgment was entered on the same day. Notice of appeal was timely filed on October 28, 2011. In her appeal, Jones contests only the district court's dismissal of the retaliation claims.

**ANALYSIS**

**A. Standard of Review**

We review a district court's grant of summary judgment de novo. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is appropriate when the materials in the record "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[S]ummary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering this question, the Court reviews the record in the light most favorable to the nonmoving party, drawing "all justifiable inferences" in her favor. *Id.* at 255.

**B. Retaliation Claims**

Title VII prohibits an employer from retaliating against an employee who "opposed any practice made an unlawful employment practice by this subchapter, or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Courts employ the same test for Title VII and § 1981 claims. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 & n.5 (6th Cir. 2000). Ohio courts employ the same test for claims of retaliation under Ohio Revised Code Chapter 4112. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 541 (6th Cir. 2003).

Absent direct evidence, as is the case here, courts analyze Title VII retaliation actions under a modified version of the *McDonnell Douglas* burden-shifting framework. A plaintiff must first establish a prima facie case of retaliation by showing (1) she engaged in activity protected by Title

VII; (2) the defendant knew the plaintiff exercised her protected rights; (3) the defendant thereafter took action materially adverse to the plaintiff; and (4) there is a causal connection between the protected activity and the materially adverse action. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to present a legitimate, nonpretextual reason for the action. *Id.* If the defendant comes forward with a qualifying reason, the plaintiff must then demonstrate that the proffered reason was a pretext, and not the real reason for the employment decision. *Id.*

### 1. Prima Facie Case

For purposes of this opinion, we assume that Jones made a prima facie case of retaliation.

### 2. St. Jude's Legitimate Nonpretextual Reasons

St. Jude brought forth two alleged nonpretextual reasons for Jones' termination: (1) her failure to meet the requirements of her performance improvement plan and (2) her recording of conversations in violation of St. Jude company policy.

### 3. Pretext

"[T]o survive summary judgment a plaintiff need only produce enough evidence . . . to rebut, but not disprove, the defendant's proffered rationale." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007) (assessing pretext in a discrimination case), *overruled on other grounds by Gross v. Fin. Servs., Inc.*, 557 U.S. 167 (2009). In order to disprove the proffered rationale, a plaintiff must show one of the following: "(1) that the proffered reasons had no basis *in fact*, (2) that the proffered reasons did not *actually* motivate [her] discharge, or (3) that they were *insufficient* to motivate discharge." *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008) (alteration in original)

(internal quotation marks omitted). Jones attempts to rebut St. Jude's proffered rationale under the second manner of proving pretext, whereby

> the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by*, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

"[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason," the employee cannot establish pretext simply because the reason is ultimately shown to be incorrect. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). The key in assessing whether an employer had an honest belief is "whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998). An employer has an honest belief in its rationale when it "reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski*, 274 F.3d at 1117 (quoting *Smith*, 155 F.3d at 807)). "[W]e do not require that the decisional process used by the employer be optimal or that it left no stone unturned." *Smith*, 155 F.3d at 807. Instead, a plaintiff must "put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001) (citing *Smith*, 155 F.3d at 806-07).

No. 11-4211
*Jones v. St. Jude Medical, S.C.*

When an employer offers more than one independent, legitimate, non-discriminatory reason for an adverse employment action, even if one is found to be pretextual but at least one other is not, the defendant employer is still entitled to summary judgment. *Burks v. Yellow Transp., Inc.*, 258 F. App'x 867, 876 (6th Cir. 2008); *Rufo v. Dave & Busters, Inc.*, No. 06-3111, 2007 WL 247891, at **3-4 (6th Cir. Jan. 31, 2007); *Smith*, 155 F.3d at 806; *Sims v. Cleland*, 813 F.2d 790, 793 (6th Cir. 1987). Further, when the proffered reasons are independent of each other, "the falsity or incorrectness of one may not impeach the credibility of the remaining reason(s)." *Sims*, 813 F.2d at 793.

*Smith* noted a narrow exception to the rule:

> [W]e wish to point out that an employer's strategy of simply tossing out a number of reasons to support its employment action in the hope that one of them will "stick" could easily backfire. "There may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995). Thus a multitude of suspicious explanations may itself suggest that the employer's investigatory process was so questionable that any application of the "honest belief" rule is inappropriate.

*Smith*, 155 F.3d at 809. However, the *Smith* court did not find that the facts presented there fit within the exception. Indeed, "[t]he two justifications and the sources from which they were derived were separate in nature." *Id.*

At issue in *Smith* was whether the defendant's proffered reasons for terminating the plaintiff—that the plaintiff had lied on employment forms about suffering from narcolepsy and unusual fatigue—were pretextual. *Id.* at 805. One of the proffered reasons "related to whether

Smith suffered from narcolepsy, which was answered by reasonably relying on the opinions of Smith himself and his treating physician." *Id.* at 809. Objective evidence supported a finding that (1) the plaintiff lied on an employment form about his condition and (2) that the defendant had this information when deciding to terminate the plaintiff. *Id.* at 808. "[T]he other involved a more specific judgment on the disorder's particular symptoms that was based on the employer's own subjective opinion." *Id.* at 809. The defendant tried to support this rationale with evidence obtained after deciding to terminate the plaintiff. *Id.* at 808-09. The court noted that a defendant cannot buttress its termination decision with post hoc justifications. *Id.* at 809. However, even though the court determined that the defendants misjudged the second proffered rationale, this did not "drag down its more general and medically supported conclusion concerning the former." *Id.* We therefore affirmed summary judgment in the case even though the plaintiff raised doubt as to one of the employer's two articulated reasons because such doubt was insufficient to call into question the employer's other reason. *Id.* In other words, the suspicion or even taint of pretext from one reason does not preclude summary judgment as long as the other reason is independent and legitimate. *Id.*

### a. Termination for Failing to Meet Requirements of Performance Improvement Plan

We assume, for purposes of this opinion, that Jones rebutted St. Jude's first alleged nonpretextual reason for her termination—her failure to meet the requirements of the performance improvement plan. We therefore move to the second proffered rationale for terminating Jones.

### b. Termination for Tape Recordings

In order to prevail, Jones must show that St. Jude's decision to fire her for making the recordings was a mere pretext, something she cannot do. Jones concedes (1) that the recordings were made in derogation of company policy; (2) that she recorded the conversations, some even after she knew it violated company policy; and (3) that the recordings would be a sufficient basis for termination. She contends, however, that there is an inference that her termination for making the recordings was pretext. She also argues that, regardless of the company recording policy, her recordings cannot provide a legitimate basis for her termination because they were protected activity under Title VII.

Jones argues that in totality the reasonable inference is that her employment termination based on making the recordings was a mere pretext for retaliation. A large part of her argument depends on the length of time St. Jude took to review the recordings. She states that St. Jude knew of the recordings in May and did not fire her until December. However, she does not contest that the recordings were not provided to St. Jude until October. Further, St. Jude passed the recordings to its area senior vice president, Grubiak, for review. Jones argues that her case falls within the narrow exception articulated in *Smith* that the two reasons for her termination proffered by St. Jude are so intertwined that a reasonable juror could find pretext. She relies on *May v. Pilot Travel Ctrs. LLC*, No. 2:05-cv-918, 2007 WL 108001 (S.D. Ohio Jan. 5, 2007), for this argument.

In *May* the plaintiff was fired shortly after taking FMLA leave. *Id.* at *1. The plaintiff filed a lawsuit alleging FMLA retaliation. *Id.* at *2. The defendants brought forth two allegedly nondiscriminatory reasons for plaintiff's termination: the plaintiff (1) worked employees off the

clock to avoid paying overtime ("overtime") and (2) rolled invoices to make payments fall into a different time frame to artificially inflate profits ("rolling invoices"). *Id.* at *1.

The reasons for terminating the plaintiff were brought forth by the same supervisor in the same investigation. *Id.* at *6. Further, the overtime justification was not submitted through the defendant's decisionmaking process when the company was deciding whether to terminate plaintiff. *Id.* This, according to the court, suggested post hoc justification of the termination and thereby called into question the rolling-invoices justification. Additionally, the court found that the investigation into the overtime justification was clearly deficient, which undermined an honest belief defense. *Id.* at *7. The court held that taking all of these things together the problems present in the overtime rationale so undermined the rolling-invoices rationale that a reasonable juror could find pretext. *Id.*

However, *May* is inapposite because of its facts—Jones was terminated as a result of two decisions arising out of two different investigations conducted by different supervisors. Further, Jones has not produced any proof that Grubiak's investigation was clearly deficient; the proof shows that Grubiak listened to the recordings before deciding to terminate Jones. Therefore, this is not a case where the employer failed to make "a reasonably informed and considered decision before taking an adverse employment action." *Smith*, 155 F.3d at 807. Indeed, objective evidence supports a finding that (1) Jones violated a company policy, (2) the violation could result in termination, and (3) Grubiak had this information when he decided to terminate Jones.

The facts in this case are more analogous to the facts presented in *Rufo*. There, the defendants brought forth two reasons for denying the plaintiff a promotion—poor performance and

poor judgment. *Rufo*, 2007 WL 247891, at *3. The court believed that a genuine issue of material fact existed about whether the proffered reason of poor judgment was pretextual. *Id.* at *4. However, the court held that the other stated reason (poor performance) was not pretextual. In particular the court noted that Rufo failed to offer any evidence "to call into question the veracity of [the alleged instances of poor performance] and no arguments for why they are not legitimate reasons to deny him a promotion." *Id.* The plaintiff failed to produce any evidence rebutting the defendant's poor performance rationale for terminating the plaintiff. *Id.* Similarly, Jones fails to call into question her violation of company policy and why the violation is not a legitimate reason for her termination. She effectively concedes that her actions were a legitimate reason to fire her.

Although Jones offered evidence which may have "raised doubt" as to the legitimacy of the reason for failing to achieve the requirements of the improvement plan, she raised no such questions about the secret recording of conversations, admitting that it was a terminable offense and a clear violation of company policy. Additionally, the reasons are independent of each other. Grubiak terminated Jones for violating the tape recording policy, while Moore terminated Jones for failing to meet the requirements of the performance improvement plan. Therefore, just as in *Smith*, despite potential questions of material fact as to one articulated reason, the other independent, legitimate, nondiscriminatory reason stands, and summary judgment for St. Jude is appropriate.

Finally, Jones contends that, regardless of the company recording policy, her recordings cannot provide a legitimate basis for her firing because they were protected activity under Title VII. Under Title VII, an employer is forbidden from retaliating against an employee because she opposes the employer's discriminatory activity—the "opposition clause"—or because she participates in Title

VII legal proceedings—the "participation clause." 42 U.S.C. § 2000e-3(a). Only the opposition clause applies in Jones's case, because she made many of the recordings well before she first filed a discrimination complaint with the Equal Employment Opportunity Commission in June 2008.

An employee may claim protection for activities opposed to alleged discrimination so long as the manner of the employee's opposition is reasonable. *See Johnson*, 215 F.3d at 580. Jones invokes the balancing test of *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714 (6th Cir. 2008), to support the argument that her recordings were reasonable opposition. In *Niswander*, the plaintiff violated company policy by disclosing confidential documents in the course of a class-action lawsuit. The multi-factor balancing test we constructed in *Niswander* applied specifically to confidential documents, and thus is not directly relevant here. However, after applying the balancing test, we ultimately found that the *Niswander* plaintiff's activities were unreasonable and thus not protected as a matter of law. *See Niswander*, 529 F.3d at 721, 727. In doing so, we relied heavily on the fact that the plaintiff could have preserved evidence in ways that did not violate the defendant's nondisclosure policy. *Id.* at 727.

In a similar vein, Jones has not shown why she needed to violate the recording policy in order to oppose defendants' alleged discrimination. She might have taken notes of the conversations, obtained the same information through legal discovery, or simply asked her interlocutors for permission to record. Jones argues that her conduct was reasonable because the recordings were not illegal, did not breach confidential information, were not disruptive of business operations, and were not disseminated beyond the litigation. But none of this suggests that the recording policy was illegitimate or that it would have been futile to oppose the alleged discrimination in ways that did

No. 11-4211
*Jones v. St. Jude Medical, S.C.*

not violate the policy.  In light of these considerations, we decline to hold that Jones' recordings were

protected.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment.