OPINION
{¶ 1} HLS Bonding, dba SMD/HLS Bonding Company (hereinafter "HLS"), appeals the judgment of the trial court, which affirmed a cease and desist order of the Ohio Civil Rights Commission (hereinafter "Commission") involving a retaliation claim by former employee Mark Glaser. On appeal, HLS contends that the trial court erred when it found that (1) the Commission established a prima facie case of retaliation, and (2) *Page 2 
HLS's explanation for an adverse employment action was pretextual. Because reliable, probative, and substantial evidence supports the trial court's findings, we disagree and find that the trial court did not abuse its discretion. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} Glaser started working part-time for HLS in 1991, and after he received his college degree, he worked full-time. He became a licensed bail bondsman. After displaying a talent for office work, the owners of HLS (Harvey Handler and Lowell Fox) made him the office manager, and gave him a substantial pay increase. Handler and Fox described Glaser as an excellent employee and asked him on several occasions to buy into the business and become their partner. In fact, they asked him to become a partner in the business approximately one month before terminating him.
 {¶ 3} Glaser paid bills for HLS, including premiums for health insurance. Michael English, an employee for 20 years and the only full-time African-American employee, did not receive health insurance benefits like many of the other workers. Glaser told the owners of HLS that they should provide English with health care benefits. Glaser also told English that he should receive the health care benefits and shared with him the names of the employees who received the same.
 {¶ 4} English, who asked HLS for health care benefits on many occasions, once again asked HLS for the benefits. Glaser was present and knew that English was recording the conversation. HLS denied English's request.
 {¶ 5} English filed a race discrimination claim against HLS with the Commission on April 22, 2002. On April 23, 2002, the Commission orally informed Handler that *Page 3 
English had filed the discrimination claim. On April 25, 2002, the Commission mailed Fox and Handler a notification informing them of English's claim and a copy of the claim, which indicated that HLS was not providing health insurance coverage to English like it was for other employees.
 {¶ 6} Shortly after receiving notice of English's claim, the owners of HLS demoted Glaser from office manager to bail bondsman and reduced his pay. Further, the owners no longer provided health insurance to any employee. Eventually, Handler confronted Glaser in the courthouse and told him that he was reducing his pay again because he was not satisfied with how Glaser was handling his duties. Handler informed Glaser that he would now work in the office and answer phones. Later that day, Handler talked to Fox about the matter and then told Glaser to go home and come back at 5 p.m. to pick up his check.
 {¶ 7} After Glaser left, Handler and Fox concluded that Handler was so scared of Glaser that they needed to fire him. When Glaser picked up his check, Handler handed him a termination letter effective immediately. The stated reasons in the letter for Glaser's termination were the failure to carry out duties, failure to comply with his employment contract, and insubordination.
 {¶ 8} Glaser filed a claim with the Commission on August 12, 2002, alleging that HLS retaliated against him because English filed a claim of racial discrimination after Glaser informed him of HLS's discriminatory practices involving the health insurance.
 {¶ 9} Eventually, the Commission held a hearing. Four witnesses testified and 17 exhibits were introduced into evidence. The Administrative Law Judge ("ALJ") of the Commission recommended a finding in favor of Glaser. HLS filed objections. The full *Page 4 
Commission adopted the ALJ's findings of fact, conclusions of law, and recommendations. On March 1, 2007, the Commission issued its order. The Commission ordered HLS to cease and desist from all discriminatory practices under R.C. Chapter 4112; make an offer of employment to Glaser; submit to the Commission within ten days of the offer of employment a certified check payable to Glaser for wages he would have earned from May 31, 2002, until the date of the offer of employment (including pay raises and benefits) less Glaser's interim earnings, plus interest at the maximum rate allowed by law.
 {¶ 10} HLS appealed the Commission's order to the Franklin County Court of Common Pleas. The court found the Commission's order was supported by reliable, probative, and substantial evidence and in accordance with law and affirmed the Commission's order.
 {¶ 11} HLS now appeals the trial court's judgment and asserts the following two assignments of error:
 First Assignment of Error
 The Common Pleas Court erred in finding that the Ohio Civil Rights Commission had established a prima facie case of retaliation.
 Second Assignment of Error
 The Common Pleas Court erred in finding that [HLS's] race-neutral explanation for an adverse employment action was pretextual.
 II. {¶ 12} We first set forth the standard of review for appeals from the Ohio Civil Rights Commission. The court of common pleas must affirm the order of the Commission if the court finds that there is reliable, probative, and substantial evidence *Page 5 
in the record to support it. R.C. 4112.06(E); Plumbers SteamfittersJoint Apprenticeship Commt. v. Ohio Civ. Rights Comm. (1981),66 Ohio St.2d 192, paragraph two of the syllabus. The court must give due deference to the Commission's resolution of evidentiary conflicts because the Commission has the opportunity to observe the demeanor of the witnesses and weigh their credibility. Univ. of Cincinnati v.Conrad (1980), 63 Ohio St.2d 108, 111. However, the court may reverse the Commission's judgment where the Commission's determination rests upon inferences improperly drawn from the evidence adduced. Id. at 111-112.
 {¶ 13} Our review of the trial court's judgment is more limited. We may reverse a determination of the court of common pleas only upon a showing that the court abused its discretion. Ohio Civ. Rights Comm. v.Case W. Res. Univ., 76 Ohio St.3d 168, 177, 1996-Ohio-53, citingCleveland Civ. Serv. Comm. v. Ohio Civ. Rights Comm. (1991),57 Ohio St.3d 62, 65. See, also, Lorain City School Dist. Bd. of Edn. v. StateEmp. Relations Bd. (1988), 40 Ohio St.3d 257, 260-261. Accordingly, while the standard of review for the court of common pleas is whether the record contains reliable, probative, and substantial evidence to support the Commission's decision, this court's standard of review is whether the court of common pleas abused its discretion. An abuse of discretion involves more than an error of judgment; it connotes an attitude on the part of the court that is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, citing State v. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 14} HLS contends in its first assignment of error that the common pleas court erred when it found that the Commission, on behalf of complainant Glaser, had established a prima facie case of retaliation. *Page 6 
 {¶ 15} "It shall be an unlawful discriminatory practice * * * [f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section ["opposition clause"] or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07
of the Revised Code ["participation clause"]." R.C. 4112.02(I). The complainant must establish a violation of R.C. 4112.02(I) by a preponderance of reliable, probative, and substantial evidence. R.C. 4112.05(E) and (G).
 {¶ 16} Here, the Commission's ALJ found that HLS violated the participation clause of R.C. 4112.02(I).
 {¶ 17} Ohio courts addressing alleged violations of R.C. Chapter 4112
follow federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000 et seq., Title 42, U.S. Code. Plumbers Steamfitters, supra, at 196.
 {¶ 18} "In order to establish a prima facie case of retaliation, pursuant to R.C. 4112.02(I), [the Commission, on behalf of the complainant,] is required to prove: `(1) [complainant] engaged in a protected activity; (2) the employer knew of [complainant's] participation in the protected activity; (3) the employer engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action.'" Motley v. Ohio Civ. RightsComm., Franklin App. No. 07AP-923, 2008-Ohio-2306, ¶ 11, quotingZacchaeus v. Mt. Carmel Health Sys., Franklin App. No. 01AP-683, 2002-Ohio-444. "If the evidence indicates that an employer `would have made the same employment decision regardless of the employee's participation in the protected activity, *Page 7 
the employee cannot prevail.'" Id., quoting Pulver v. Rookwood HighlandTower Invests. (Mar. 26, 1997), Hamilton App. No. C-950361.
 {¶ 19} The establishment of a prima facie case creates a presumption that the employer unlawfully discriminated against the complainant. See, e.g., Texas Dept. of Community Affairs v. Burdine (1981), 450 U.S. 248,253-254. Further, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Plumbers Steamfitters, at 197, citing McDonnell Douglas Corp. v. Green (1973),411 U.S. 792, 802. Once the employer sets forth a nondiscriminatory reason, the presumption raised by the prima facie case is rebutted and drops from the case. Burdine, supra, at 255. The Commission, on behalf of the complainant, then must demonstrate that the reason proffered by the employer was not the true reason for the employment decision, but, rather, was a cover-up, or pretext, for a discriminatory decision.McDonnell Douglas Corp., at 805. The ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the complainant remains on the Commission, on behalf of the complainant.Burdine, at 253; Little Forest Med. Ctr. of Akron v. Ohio Civ. RightsComm. (1991), 61 Ohio St.3d 607, 610.
 {¶ 20} Here, reliable, probative, and substantial evidence supports the court's finding that the Commission, on behalf of Glaser, established a prima facie case of retaliation.
 {¶ 21} First, reliable, probative, and substantial evidence supports the finding that Glaser engaged or participated in a protected activity. Anyone who participates in bringing a claim of unlawful discriminatory practice is engaging in a protected activity. See, e.g., Thatcher v.Goodwill Industries of Akron (1997), 117 Ohio App.3d 525, 535. *Page 8 
Glaser alerted English to the health care issue. Glaser told English that he would testify on English's behalf before the Commission. English named Glaser as a witness when he brought his claim. Glaser told his employer that it should offer English health care benefits. In addition, Glaser was present and knew English was "wired," when English then asked their employer for health care benefits.
 {¶ 22} HLS argues that all of the above facts, except for English naming Glaser as a witness, occurred before English filed his discrimination charge. To support its argument, HLS cites toE.E.O.C. v. Total Sys. Servs., Inc. (C.A.11, 2000), 221 F.3d 1171, 1174, for the proposition that the participation clause "protects proceedings and activities which occur in conjunction with or after the filing of a formal charge." HLS also cites to Booker v. Brown Williamson TobaccoCo., Inc. (C.A.6, 1989), 879 F.2d 1304, for the same proposition. However, Booker states that "the instigation of proceedings leading to the filing of a complaint or a charge * * * is a prerequisite to protection under the participation clause." Id. at 1313. Here, we find that the above facts involving Glaser are activities "leading to the filing of [English's] complaint." To the extent Booker conflicts withE.E.O.C, we find Booker more persuasive. As such, we find that Glaser's acts fall under the participation clause.
 {¶ 23} Second, reliable, probative, and substantial evidence supports the finding that Glaser's employer knew of his participation in the protected activity. Prior to English's claim, Glaser questioned HLS about English's lack of health care benefits; and English asked HLS for health care benefits shortly thereafter. The Commission informed HLS orally of English's claim on April 23, 2002, and informed HLS in writing on April 25, 2002. The written notification showed that Glaser was a named witness for *Page 9 
English. HLS then changed Glaser's duties so that he would no longer write checks for health care premiums. Further, Glaser was the only one on the civil rights claim witness list that could have supplied the health care benefits information to English.
 {¶ 24} Third, reliable, probative, and substantial evidence supports the finding that HLS engaged in retaliatory conduct against Glaser. A couple of days after English filed his claim, Glaser testified that HLS "took me in, and they talked to me, and told me that I was no longer going to be doing my office manager duties, that they were going to cut back significantly on that and that I needed to concentrate on down at the courthouse." (Tr. 92.) On May 10, 2002, HLS gave Glaser a written memo, which officially changed Glaser's job duties and reduced his pay.
 {¶ 25} Finally, reliable, probative, and substantial evidence supports the finding that a causal link exists between the protected activity and the adverse action. HLS received written notification of English's claim on April 25, 2002. Just over two weeks later, on May 10, 2002, HLS gave Glaser the written memo reducing his duties and pay. In addition, the protected activity involved health insurance and the adverse action eliminated duties relative to health insurance. Because the two events occurred close in time, and because both events involved health insurance, we find that this evidence supports the finding that a causal link exists between the protected activity and the adverse action.
 {¶ 26} Therefore, we find that the common pleas court did not abuse its discretion when it found that the Commission, on behalf of complainant Glaser, established a prima facie case of retaliation.
 {¶ 27} Accordingly, we overrule HLS's first assignment of error. *Page 10 
 III. {¶ 28} HLS contends in its second assignment of error that the common pleas court erred when it found that its explanation for the adverse employment action was pretextual. HLS asserts that the Commission, on behalf of Glaser, did not meet its ultimate burden of showing that its reason for the adverse employment action was pretextual. HLS states that "to uphold the [ALJ's] ultimate conclusion that there was retaliation, the record must show not only that [HLS] articulated a false reason for its actions, but also that its real reason was unlawfulretaliation. [Citation omitted] Evidence to that effect is totally absent from the record." (Emphasis sic.) (Appellant's brief 28.)
 {¶ 29} With respect to the Commission's burden of establishing pretext, the United States Supreme Court has held: "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination[.]" (Emphasis sic.) St. Mary's Honor Ctr v. Hicks (1993),509 U.S. 502, 511. Stated differently, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the [employer's] explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves v. Sanderson Plumbing Prods., Inc.
(2000), 530 U.S. 133, 147. As such, a complainant does not always need to introduce independent evidence of discrimination to meet his or her burden of showing pretext when the trier of fact finds *Page 11 
sufficient evidence to reject the employer's explanation. Id. at 148. See, also, Peters v. Lincoln Elec. Co. (C.A.6, 2002), 285 F.3d 456, 470.
 {¶ 30} Here, reliable, probative, and substantial evidence supports the finding that the Commission, on behalf of Glaser, met its burden of showing that HLS's explanation of its adverse employment action against Glaser was pretextual.
 {¶ 31} The ALJ, as the trier of fact, did not believe HLS's explanations. She coupled this disbelief of HLS's explanations with the Commission's prior proof of the elements of the prima facie case of unlawful retaliation to find intentional discrimination.
 {¶ 32} HLS's witness explained that HLS took the adverse employment action of demoting Glaser because of Glaser's declining job performance. However, he was not specific about anyone having a conversation with Glaser about his declining job performance. In addition, HLS's witness admitted asking Glaser to become a partner in the business, and HLS would not ask any employee to become a partner if the employee had a poor work record.
 {¶ 33} HLS's witness further explained that HLS took the adverse employment action of terminating Glaser because, when he spoke to Glaser at the courthouse, he felt threatened or upset. The ALJ did not believe this testimony because of the outward demeanor of the witness when testifying.
 {¶ 34} The Supreme Court of Ohio has stated that the trier of fact "`is the sole judge of the weight of the evidence and the credibility of witnesses. It may believe or disbelieve any witness or accept part of what a witness says and reject the rest. (In so doing it) * * * should consider the demeanor of the witness and the manner in which he testifies, his connection or relationship with the * * * (plaintiff) or the defendant, and his *Page 12 
interest, if any, in the outcome.'" McKay Machine Co. v. Rodman (1967),11 Ohio St.2d 77, 82, quoting State v. Antill (1964), 176 Ohio St. 61,67.
 {¶ 35} As such, the ALJ was within her province to find that HLS's explanations were not credible. She coupled this disbelief with the evidence submitted to establish a prima facie case of intentional discrimination. Stated differently, the ALJ ultimately found that the real reason HLS rendered its adverse employment actions against Glaser was unlawful retaliation.
 {¶ 36} As we stated earlier, HLS contends that "[e]vidence to that effect is totally absent from the record." (Appellant's brief 28.) We agree with HLS that direct evidence does not support the unlawful retaliation finding. However, whether the evidence supporting a finding is direct or circumstantial does not bear on our determination. "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus (superseded by state constitutional amendment on other grounds).
 {¶ 37} Reliable, probative, and substantial circumstantial evidence supports the finding that HLS's real reason for demoting and eventually terminating Glaser was to retaliate against him for helping English with his separate claim against HLS. The record shows that Glaser told HLS that it should offer health care benefits to English and later was present when a "wired" English asked HLS for the benefits. Glaser volunteered to be a witness for English when English filed his separate claim. Shortly after HLS learned that English had filed a claim, HLS (1) no longer allowed Glaser to *Page 13 
write checks for the health care premiums, (2) demoted Glaser, (3) reduced his pay, and (4) eventually terminated him.
 {¶ 38} Therefore, we find that the ALJ's disbelief of the reasons put forward by HLS, together with the evidence submitted to show the elements of the prima facie case of retaliation, is reliable, probative, and substantial evidence that shows intentional discrimination. Consequently, we find that the trial court did not abuse its discretion and we overrule HLS's second assignment of error.
 {¶ 39} Accordingly, we overrule HLS's first and second assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BROWN and KLATT, JJ., concur.
KLINE, J., of the Fourth Appellate District, sitting by assignment in the Tenth Appellate District. *Page 1