[Cite as *Smith v. Dept. of Pub. Safety*, 2012-Ohio-6358.]



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WILLIE SMITH, JR.

     Plaintiff

     v.

OHIO DEPARTMENT OF PUBLIC SAFETY, et al.

     Defendants

Case No. 2009-06257

Judge Alan C. Travis

DECISION

{¶ 1} Plaintiff brought this action alleging claims of racial discrimination and retaliation. The issues of liability and damages were bifurcated and the case proceeded to trial on the issue of liability.

{¶ 2} In April 1998, plaintiff, an African American male, was hired as an Ohio State Highway Patrol (OSHP) cadet and was promoted to trooper in October 1998. In June 1999, plaintiff was assigned to the Warren Post, under the supervision of Lt. Joseph Dragovich, who is white. In July 2000, after an investigation conducted by Lt. Dragovich, plaintiff's employment was terminated for "conduct unbecoming an officer" for allegedly making threatening and intimidating remarks to his coworkers and to the public.

{¶ 3} In October 2000, plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission alleging racial discrimination. In 2001, an arbitrator found that defendants did not have just cause to terminate plaintiff's employment and he was reinstated. In 2003, Lt. Dragovich transferred to the Lisbon Post. After the transfer,

plaintiff had no major disciplinary issues. On April 18, 2005, Lt. Dragovich was promoted to Post Commander

**{¶ 4}** of the Warren Post. At approximately the same time, plaintiff went on medical leave. In April 2006, plaintiff returned to work and encountered additional problems with Lt. Dragovich. In September 2006, an Administrative Investigation (AI) was initiated against Lt. Dragovich as a result of plaintiff's complaints of racial bias. The AI resulted in the conclusion that there was no evidence to support that plaintiff was being treated unfairly or that racial bias was involved. On October 6, 2006 plaintiff filed another charge of discrimination and retaliation based upon the same conduct that plaintiff complained about in the September AI. Beginning in May 2007, Lt. Dragovich pursued three AIs regarding plaintiff, which resulted in plaintiff's employment being terminated on October 16, 2007 for making false statements. Plaintiff asserts that none of the violations found in the investigations warranted termination, however, due to Lt. Dragovich's personal animosity toward him, the three violations were consolidated so that the discipline imposed on him would be more severe. Plaintiff claims that his employment was terminated because of racial discrimination and in retaliation for complaining about racial discrimination.

**{¶ 5}** The first incident that resulted in an AI occurred on May 11, 2007. On that morning, plaintiff was scheduled to testify at Warren Municipal Court as the arresting officer in a case identified as State v. Kish involving an operation of a motor vehicle under the influence of alcohol or drugs (OMVI). Plaintiff's regular shift was 10:00 p.m. to 6:00 a.m.; accordingly, in order to attend the court hearing, he had to appear during his non-working hours. Troopers earn either compensatory time or overtime pay for court appearances.

**{¶ 6}** On the morning of the hearing, plaintiff drove to the courthouse and radioed the dispatcher to show that he was on duty. However, once plaintiff arrived at the courthouse parking lot, he remained in his vehicle and made personal calls on his cell phone. Plaintiff testified that while he was in the parking lot, he saw the defense attorney who was representing Mr. Kish exit the courthouse. Once he saw the attorney, he made the assumption that the Kish case had been continued. Plaintiff then left the

parking lot, returned to his residence, and radioed the dispatcher that he was out of service.[1]

{¶ 7} When plaintiff began his work shift at approximately 10:00 that evening, he specifically asked his supervisor, Sgt. Michael Harmon, whether his overtime for the court attendance had been approved. Sgt. Harmon then approved the overtime. Shortly thereafter, plaintiff verified that his time sheet was accurate, including the compensatory time for the court appearance. Later, Sgt. Harmon became aware that plaintiff had not attended the Kish hearing. Lt. Dragovich initiated an AI of the incident based upon the fact that plaintiff verified his time sheet which granted him compensatory time for appearing at a court hearing that he did not attend. When questioned during the investigation, plaintiff stated that once he explained the situation to Sgt. Harmon, he felt that he might still be entitled to something, such as one hour of compensatory time. (Plaintiff's Exhibit 4a, page 10.) During the investigation, plaintiff admitted that he did not report to the prosecutor for the hearing, but stated that while he was at the courthouse that day he checked on the status of the case.

{¶ 8} The second incident that resulted in an AI occurred on June 25, 2007. Plaintiff was en route to an off-duty detail when he was notified by the dispatcher that he was simultaneously scheduled to be in court on an OMVI case. Plaintiff then called Lt. Dragovich to advise him of the conflict. Plaintiff submitted transcripts of the telephone conversations between himself and Lt. Dragovich. (Plaintiff's Exhibits 5a and 5b.) During those conversations, plaintiff stated that the prosecutor had informed him "awhile ago" that the hearing was going to be continued. Lt. Dragovich checked the "court book" at the post and discovered that the court had never called to say that the case had been continued. Lt. Dragovich advised plaintiff that as a general practice, he should call the court in advance of scheduled hearings to ascertain whether a continuance had been granted prior to accepting an off-duty detail. As a result of plaintiff's failure to be available, the hearing was rescheduled.

{¶ 9} The third incident occurred as the result of a traffic citation that plaintiff had issued on July 12, 2007, to a motorist for driving while intoxicated. Although plaintiff

---

[1]Plaintiff testified that he did go to the courthouse to conduct some unrelated personal business there. It is unclear to the court whether plaintiff conducted the unrelated business shortly after he

completed part of the required paperwork before the end of his shift, he failed to deliver the original citation to court prior to the motorist's initial court date on July 19, 2007. Plaintiff explained at trial that after he made the arrest, he was pressed for time to complete his paperwork. According to plaintiff, Sgt. Larry Firmi advised him to make sure to get the blood sample processed and then complete the remaining paperwork during his next shift. Plaintiff was not at work for five days after July 12 due to medical issues with both his father and himself. The next time that plaintiff was on duty he remembered that the paperwork had not been completed.

{¶ 10} During that investigation, Sgt. Firmi made a written statement that when plaintiff was questioned about why the paperwork had not been submitted to court, he advised Sgt. Firmi that he had called the court the day before and was advised "not to worry about" the paperwork, but he could not remember the name of the clerk to whom he had spoken. Sgt. Charles Mendenhall also issued a written statement during the AI that when plaintiff was questioned about the paperwork, he stated that he had contacted the court earlier in the day and that the clerk advised him that the motorist could be arraigned off of the "blue copy" of the citation that was issued to the motorist during the arrest. As a result of the AI, plaintiff's representation about what the clerk had told him was determined to be false.

## I. RACIAL DISCRIMINATION

{¶ 11} R.C. 4112.02 provides, in pertinent part, that: "It shall be an unlawful discriminatory practice: (A) For any employer, because of the race * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 12} In Ohio, "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) et seq., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112." *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

---

assumed that the hearing had been continued, or whether he returned to the courthouse in the afternoon of May 11, 2007 before the start of his shift.

{¶ 13} A plaintiff may establish a prima facie case of discrimination either by direct evidence or by the indirect method established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff is not pursuing a claim of employment discrimination based upon direct evidence.[2] Therefore, the court will analyze plaintiff's claim under the indirect method.

{¶ 14} Under *McDonnell Douglas*, plaintiff first has "the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' * * * Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981), quoting *McDonnell Douglas*, *supra*, at 802, 804. In order to establish a prima facie case of racial discrimination based upon disparate treatment, plaintiff must demonstrate that: 1) he is a member of a protected class; 2) that he suffered an adverse employment action; 3) that he was qualified for the position; and 4) either that he was replaced by someone outside the protected class or that a comparable, non-protected person was treated more favorably. *Mowery v. City of Columbus,* 10th Dist. No. 05AP-266, 2006-Ohio-1153, ¶ 43; *see also McDonnell Douglas, supra*; *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992).

{¶ 15} It is undisputed that plaintiff was a member of a protected class and that his termination constitutes an adverse employment action. Although defendants assert that plaintiff was not qualified for the position of trooper because he was found to be untruthful as a result of the AIs, defendants' proffered reasons for plaintiff's termination cannot be considered in determining whether plaintiff presents a prima facie case of discrimination. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir.2003). Therefore, inasmuch as plaintiff remained employed as a trooper for a number of years prior to his termination, the court finds that plaintiff was qualified for the position.

---

[2]See plaintiff's response to defendants' post-trial brief, page 9, footnote 2.

{¶ 16} Plaintiff did not present evidence regarding any individual who replaced him. However, plaintiff did present evidence with regard to other white troopers who plaintiff asserts were treated more favorably.

{¶ 17} In order to establish a prima facie case of discrimination based upon treatment of comparables, a plaintiff must show that the other persons referenced were comparable in all respects. *Mitchell, supra,* at 583. A "plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated'; rather, * * * the plaintiff and the employee with whom the plaintiff seeks to compare [himself] * * * must be similar in 'all of the relevant aspects.' The individuals with whom the plaintiff seeks to compare * * * [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Citations omitted.) *Clark v. City of Dublin,* 10th Dist. No. 01AP-458, 2002-Ohio-1440, ¶ 22-23.

{¶ 18} At trial, plaintiff asserted that Sgt. Mendenhall, Sgt. Harmon, and Trooper Walker were comparable employees who were treated more favorably than he was.[3] With regard to Sgt. Mendenhall and Sgt. Harmon, the court finds that inasmuch as they were at the rank of Sergeant, plaintiff's argument that they were similar in all relevant aspects is not well-taken. However, the court finds that plaintiff has proven by a preponderance of the evidence that Trooper Walker had the same supervisor, was subject to the same standards, and engaged in similar conduct to plaintiff, but was not disciplined as harshly as plaintiff. Indeed, Trooper Walker was disciplined for missing court appearances and failure to file court paperwork, among other infractions. Trooper Walker received a 10-day suspension for failing to appear in court for two scheduled hearings. The court finds that plaintiff has brought forth sufficient evidence to support a prima facie case of disparate treatment based upon Trooper Walker's discipline. Therefore, the burden shifts to defendants to articulate some legitimate, nondiscriminatory reason for plaintiff's termination. *See McDonnell Douglas, supra.*

---

[3]Plaintiff states on page 14 of his response to defendants' post-trial brief that he no longer asserts that Trooper Allen was a comparable employee.

{¶ 19} Defendants assert that plaintiff's employment was terminated because he violated the rules of his employment on three separate occasions within a two-month period and that he was untruthful during the ensuing AIs regarding those three incidents.

{¶ 20} Lt. Charles Linek testified that he oversees the professional standards unit for OSHP. Lt. Linek explained that OSHP's policy states that a trooper who attends a court hearing during off-duty hours is guaranteed a minimum of three hours of court overtime or actual hours worked, whichever is greater. In addition, the overtime policy specifically states: "Actual court appearance is required to qualify for the guaranteed minimum pay. Court appearances require the employee to arrive at the location of the hearing and meet with the prosecutor." (Defendants' Exhibit S.)

{¶ 21} Lt. Dragovich testified that missing a court date is not grounds for termination in and of itself, but it is grounds for discipline. According to Lt. Dragovich, the AI was initiated because plaintiff attempted to be compensated for attending court even though he did not appear. Lt. Dragovich also testified that plaintiff was untruthful during his interview when he tried to explain why he verified his time sheet. With regard to the second AI, Lt. Dragovich stated that double booking yourself is not grounds for termination in and of itself. However, Lt. Dragovich testified that plaintiff represented to him that the case he was scheduled for had been continued when it had not been. With regard to the third AI, Lt. Dragovich stated that failure to file paperwork with the court is not in and of itself grounds for termination. However, according to Lt. Dragovich, plaintiff again represented that he had taken care of the problem at court when he had not.

{¶ 22} Traci Mendenhall testified that she has been the assistant law director for the city of Warren since 2001 and that she practices in the Warren City Municipal Court in Trumbull County, Ohio. Mendenhall confirmed that plaintiff did not appear for the Kish case. With regard to the second AI, she testified credibly that there was "no way" that she could have told plaintiff that the hearing had been continued three weeks earlier, and when she discovered that plaintiff had represented that she had told him it would be continued, she felt that plaintiff was "taking advantage" of her.

{¶ 23} Lt. Linek testified that if an OSHP employee is charged with making false statements, the employee is either placed on a last chance agreement or discharged from employment. According to Lt. Linek, troopers are taught that making false statements is a terminable offense. Lt. Linek stated that he, Major Kevin Teaford, and multiple other OSHP employees made the decision to terminate plaintiff's employment as a result of the three AIs.

{¶ 24} Based upon the totality of the evidence, the court concludes that plaintiff attempted to be compensated for a court appearance that he failed to attend. Although plaintiff gave differing versions of the rationale for his behavior at different times throughout the investigation and at trial, the court finds that plaintiff's attempt to explain his actions does not change those facts. The court further finds that plaintiff made false statements during the AIs to attempt to explain his actions, and that making false statements is a ground for termination. Therefore, the court finds that defendants have articulated a legitimate, nondiscriminatory reason for the termination of plaintiff's employment.

{¶ 25} Thus, plaintiff must prove "that the reasons the employer offered were not its true reasons, but merely a pretext for discrimination." *Wigglesworth v. Mettler Toledo Int'l. Inc.*, 10th Dist. No. 09AP-411, 2010-Ohio-1019, ¶ 16. Plaintiff must show by a preponderance of the evidence that either the employer's proffered reasons had no basis in fact, that the proffered reasons did not actually motivate his discharge, or that they were insufficient to motivate discharge. *See Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 545 (6th Cir.2008). Regardless of which method is employed, plaintiff retains the ultimate burden of producing "sufficient evidence from which the [trier of fact] could reasonably reject [defendants'] explanation and infer that [defendants] intentionally discriminated against him." *Id.*

{¶ 26} Major George Williams who is black, testified that he was assigned to the Warren Post when plaintiff was reinstated after his first removal, and that he was aware of both plaintiff's history with Lt. Dragovich and plaintiff's allegations of racial discrimination. According to Major Williams, "everybody knew" that Lt. Dragovich and plaintiff did not get along with each other and did not like each other personally.

**{¶ 27}** Major Peyton Watts testified that plaintiff complained to him over the duration of his employment that Lt. Dragovich was "riding" him and he felt that he was being treated differently because of his race. At some point in time, Major Watts conducted a meeting with both plaintiff and Lt. Dragovich to discuss their relationship but no agreement came from that meeting. In Major Watts' opinion, it was a "personality conflict" that needed to be managed. Major Watts also stated that Lt. Dragovich was considered a good supervisor despite his interactions with plaintiff. Although plaintiff asserts that Lt. Dragovich's animosity toward him was based upon his race, the court finds that plaintiff has failed to prove that defendants' proffered reasons had no basis in fact, that the proffered reasons did not actually motivate his discharge, or that they were insufficient to motivate discharge. Therefore, the court finds that plaintiff has failed to prove that defendants' reasons for his termination were pretextual. Hence, plaintiff cannot prevail on his claim of race discrimination.

## II. RETALIATION

**{¶ 28}** Plaintiff further claims that his employment was terminated in 2007 in retaliation for engaging in the protected activity of complaining about racial discrimination. Plaintiff filed a charge of discrimination in October 2006. (Plaintiff's Exhibit 15.) Plaintiff additionally argues that he complained of unequal treatment based upon his race throughout his employment because of Lt. Dragovich's unrelenting personal animosity toward him.

**{¶ 29}** R.C. 4112.02(I) provides that it is unlawful "[f]or any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code."

**{¶ 30}** In order to establish a prima facie case of retaliation, pursuant to R.C. 4112.02(I), a plaintiff is required to prove that: "'(1) plaintiff engaged in a protected activity; (2) the employer knew of plaintiff's participation in the protected activity; (3) the employer engaged in retaliatory conduct; and (4) a causal link exists between the protected activity and the adverse action.'" *Motley v. Ohio Civil Rights Commission*,

10th Dist. No. 07AP-923, 2008-Ohio-2306, ¶ 11, quoting *Zacchaeus v. Mt. Carmel Health Sys.*, 10th Dist. No. 01AP-683, 2002-Ohio-444.

{¶ 31} The first element of a prima facie case of retaliation is that plaintiff must have engaged in a "protected activity." Generally, "[a]nyone who participates in bringing a claim of unlawful discriminatory practice is engaging in a protected activity." *HLS Bonding v. Ohio Civ. Rights Comm'n.*, 10th Dist. No. 07AP-1071, 2008-Ohio-4107, ¶ 21, citing *Thatcher v. Goodwill Industries of Akron*, 117 Ohio App.3d 525, 535 (1997).

{¶ 32} The court finds that plaintiff engaged in a protected activity of filing a charge in 2006. However, the court further finds that plaintiff has failed to prove any causal link between such protected activity and his termination. To determine whether a causal connection exists, courts have considered the amount of time between the protected activity and the adverse employment action. An employee must show that "the alleged retaliatory action followed [the employee's] participation in the protected activity sufficiently close in time to warrant an inference of retaliatory motivation." *Neal v. Hamilton County*, 87 Ohio App.3d 670, 678 (1993). Plaintiff's EEOC charge was filed in October 2006. Plaintiff's employment was terminated in October 2007. The court finds that the amount of time that passed between the alleged protected conduct and plaintiff's termination precludes the inference of a retaliatory motive on the part of defendants. *See Reeves v. Digital Equipment Corp.*, 710 F.Supp. 675, 677 (N.D.Ohio 1989) ("as a matter of law, three months is too long to support an inference of retaliation"). Furthermore, even if plaintiff were to prove a prima facie case of retaliation, the court finds that defendants have brought forth a legitimate, nondiscriminatory reason for plaintiff's termination. As stated earlier, plaintiff has brought forth no credible evidence to demonstrate that the employer's stated reason for his termination was a pretext for discrimination. For the foregoing reasons, the court finds that plaintiff has failed to prove any of his claims by a preponderance of the evidence and, accordingly, judgment shall be rendered in favor of defendants.



# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

WILLIE SMITH, JR.

     Plaintiff

     v.

OHIO DEPARTMENT OF PUBLIC SAFETY, et al.

     Defendants

Case No. 2009-06257

Judge Alan C. Travis

## JUDGMENT ENTRY

{¶ 33} This case was tried to the court on the issue of liability. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of defendants. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
ALAN C. TRAVIS
Judge

cc:

Amy S. Brown
Randall W. Knutti
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

Laren E. Knoll
7240 Muirfield Drive, Suite 120
Dublin, Ohio 43220

002
Filed November 19, 2012
To S.C. Reporter March 22, 2013