NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2799
_____

SANDHYA VERMA,
                    Appellant

v.

UNIVERSITY OF PENNSYLVANIA
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA
(D.C. Civ. Action No. 11-cv-00611)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Under Third Circuit LAR 34.1(a)
July 12, 2013
_____

Before: GREENAWAY, JR., SHWARTZ, and BARRY, *Circuit Judges*.

(Opinion Filed: August 7, 2013  )

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Sandhya Verma ("Appellant") appeals the District Court's grant of summary

judgment to her former employer, the University of Pennsylvania ("Appellee" or

"University"), on her discrimination and retaliation claims. For the reasons provided below, we will affirm.

## I.  BACKGROUND

Because we write primarily for the benefit of the parties, we recount only the essential facts.

Appellant is of Asian Indian origin. She was hired by the University in March 2004 to serve as an International Student Services Specialist in the University's International Student and Scholars Services ("ISSS") Department. Appellant's job responsibilities included liaising with students in the English Language Program ("ELP"), processing immigration forms for students, assisting in orientation for ELP students, and other general office duties. During her time at ISSS, Appellant reported to various supervisors. Starting in 2006, and continuing through 2008, Appellant had conflicts with every supervisor to whom she reported. Principally, conflicts arose when Appellant refused to perform tasks assigned to her. These conflicts led to several negative performance evaluations, and culminated in Appellant's termination in March 2008.

In early 2006, Sheila Gardner became the Interim Director of ISSS. Gardner assigned Appellant additional responsibilities, which Appellant refused to perform. Gardner considered giving Appellant a verbal warning for her misconduct, but instead issued her a negative performance review in June 2006, noting that Appellant needed to

2

improve her adaptability and teamwork. Most important, Gardner noted that Appellant must promptly assume new job responsibilities assigned to her.

In August 2006, Rodolfo Altamirano became the Director of ISSS and Appellant's supervisor. During Altamirano's tenure, Appellant continually had conflicts with two co-workers, Suat Albulut and Shyrmaine Sin. In September 2006, Altamirano met with Appellant and Sin and issued written warnings to both employees regarding their lack of cooperation. Appellant alleges that Altamirano's handling of the conflict between her and Sin was discriminatory because Altamirano would accept Sin's complaints as true and discount her issues. She also alleges that Altamirano made a discriminatory comment to her,[1] and discriminated against her by assigning her an earlier lunch time.

In April 2007, Altamirano issued a verbal warning to Appellant because of the continuing conflicts with her co-workers, and he then issued Appellant a negative performance evaluation, rating her performance as unacceptable. Appellant objected in writing to the negative evaluations.

In May 2007, Kate Zheng was hired as the Associate Director of ISSS and became Appellant's direct supervisor. Appellant refused to perform the additional job duties Zheng assigned to her, failed to comply with Zheng's request that Appellant complete and return a self-evaluation, and refused to process certain student visa applications,

---

[1] During the meeting between Appellant and Sin, Altamirano commented to Appellant that her "cultural background" influenced her conduct and her perception of events in the workplace, which Appellant claims was offensive to her. (App. 593.)

3

which were long overdue.[2]  In December 2007, Zheng prepared a negative performance review, stating that Appellant had not been flexible and open to ideas, and had continually refused to perform tasks assigned to her.

After Zheng left ISSS in December 2007, Appellant resumed reporting to Altamirano.  During that same month, Altamirano issued Appellant a written warning, based on Zheng's negative performance review.  On February 15, 2008, Altamirano placed Appellant on probation, claiming that she had not improved her performance since the December 2007 warning.  Specifically, he cited her failures to maintain a professional relationship with her supervisor and her colleagues.  Appellant told Altamirano that putting her on probation was harassing and discriminatory.

Appellant's difficulties with Altamirano came to a head on March 5, 2008, when Appellant refused to adhere to Altamirano's instructions regarding a communication to students.  Soon thereafter, she also sent an email disparaging Altamirano to the individuals in the ELP program.  Less than two weeks later, Altamirano terminated Appellant.

Appellant claims that she informed Altamirano that she was going to file a complaint with the Equal Employment Opportunity Commission ("EEOC") sometime

---

[2] In October 2007, Appellant accused Zheng of discriminating against her and of subjecting her to unfair treatment.  After conducting an internal investigation, the University's Human Resources department and Office of Affirmative Action concluded that there was no information to support Appellant's allegations of discriminatory treatment.

before her termination.  In fact, she filed a Complaint with the Pennsylvania Human Relations Commission on March 7, 2008.  The Complaint was served on the University on March 26, 2008, after she had been terminated.  Appellant later filed a Complaint in the United States District Court for the Eastern District of Pennsylvania against the University, alleging that she was terminated on account of her race and national origin, in violation of federal and state law, and that she was retaliated against for making her claim of discrimination.[3]

## II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343 and 1367.  This Court has appellate jurisdiction under 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo, applying the same standard as the district court.  *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 257 (3d Cir. 2012).  A grant of summary judgment is appropriate where the moving party has established "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The reviewing court should view the facts in the light most favorable to the non-moving party

---

[3] Appellant brought claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951-63.  Appellant also brought a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*, but conceded before the District Court that there was insufficient evidence to support her age discrimination claim.

and draw all reasonable inferences in that party's favor. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

## III.   ANALYSIS

### A.   Discrimination Claims

Under Title VII, an employer may not "discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).[4] Our inquiry is governed by the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (per curiam).

Under the first step in the *McDonnell Douglas* analysis, the plaintiff bears the burden of making out a prima facie case of discrimination. *Scheidemantle*, 470 F.3d at 539. Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). This burden is "relatively light." *Id.* (internal quotation marks omitted). The third step shifts the burden of production back to the plaintiff to provide evidence from which a reasonable factfinder

---

[4] Appellant's claims under the PHRA and § 1981 are governed by the same legal standard as her Title VII claim. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410 (3d Cir. 1999). We will simultaneously examine Appellant's claims of race and national origin discrimination. *See St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (concluding that discrimination against classes of persons based on ancestry or ethnicity is race discrimination forbidden by Section 1981).

6

could infer that the employer's proffered justification was a pretext for discrimination. *Id.* "At all times, however, the burden of persuasion rests with the plaintiff." *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009). To demonstrate pretext at the summary judgment stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The District Court found that Appellant had stated a prima facie case of race and national origin discrimination, but granted summary judgment in favor of the University because Appellant could not demonstrate pretext. We will assume, without deciding, that Appellant has stated a prima facie case of discrimination. Appellee, in turn, has proffered a legitimate, non-discriminatory reason for terminating Appellant — namely, her ongoing conflicts with co-workers and supervisors, repeated insubordination, and poor work performance. Therefore, the burden shifts back to Appellant to demonstrate that the reason proffered by Appellee for her termination was pretextual.

We agree with the District Court that Appellant cannot satisfy this burden. She has put forth no evidence from which a reasonable factfinder could conclude that the reason offered for her termination was a pretext for discrimination. The evidence of record supports the conclusion that the University terminated Appellant because of her

long and well-documented history of arguing with her supervisors and of refusing to perform tasks that were assigned to her. The problems between Appellant and her supervisors began in 2006, and she received several negative performance reviews, a verbal warning, written warnings, and a probation letter from three different supervisors before she was terminated in 2008. Therefore, we will affirm the District Court's grant of summary judgment to Appellee on Appellant's discrimination claims.

## B. Retaliation Claims

Appellant also alleges that she was terminated as retaliation for her complaints of discriminatory treatment by her supervisors. To establish a prima facie case of retaliation, Appellant must demonstrate that (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action after or contemporaneous with the protected conduct; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). The Supreme Court has recently clarified that, as to the third prong, a plaintiff making a claim of retaliation under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

The District Court found that Appellant could not establish a prima facie case of retaliation because she could not demonstrate that there was a causal connection between her allegations of discrimination and her subsequent termination. We agree. Appellant

8

argues that causation may be inferred because of the temporal proximity between her October 2007 complaint of discrimination to the University, her subsequent discipline by Altamirano, and her March 2008 termination. This Court has "indicated that temporal proximity between the employee's protected activity and the alleged retaliatory action may satisfy the causal link element of a prima facie retaliation claim, at least where the timing is unusually suggestive of retaliatory motive." *Shaner v. Synthes*, 204 F.3d 494, 505 (3d Cir. 2000) (internal quotation marks omitted). However, this Court has declined to infer such a causal link where an employee's negative performance evaluations pre-dated any protected activity. *See id.* at 504-05. Appellant began receiving negative evaluations from her supervisors as early as 2006, and the conflicts with her supervisors continued throughout 2007, before she initiated her complaint against Zheng. Contrary to Appellant's assertions, she has presented no evidence that suggests *any* causal connection between her allegations of discrimination and her termination, let alone evidence to suggest that such activity was the but-for cause of her termination. *See Nassar*, 133 S. Ct. at 2533. Therefore, we will affirm the District Court's grant of summary judgment to the University on Appellant's retaliation claim.

## IV.    CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.