[Cite as *Tanksley v. Howell*, 2020-Ohio-4278.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Malcolm Tanksley,                          :

      Plaintiff-Appellant,          :           No. 19AP-504
                                         (C.P.C. No. 18CV-2296)

v.                                         :

Cecil Howell et al.,                       :           (REGULAR CALENDAR)

      Defendants-Appellees.         :

---

D E C I S I O N

Rendered on September 1, 2020

---

**On brief**: *Rosenberg & Ball Co., LPA*, and *David T. Ball*, for appellant.

**On brief**: *Ron O'Brien*, Prosecuting Attorney, *Denise DePalma*, and *Nick A. Soulas, Jr.*, for appellees.

---

APPEAL from the Franklin County Court of Common Pleas

BROWN, J.

{¶ 1} Plaintiff-appellant, Malcolm Tanksley, appeals from a judgment of the Franklin County Court of Common Pleas granting the Civ.R. 56 motion for summary judgment filed by defendants-appellees Cecil Howell, Diane Mueller, and Orvell Johns (collectively, "defendants"). For the reasons which follow, we affirm.

{¶ 2} On March 15, 2018, Tanksley filed a complaint against Howell, Mueller, and Johns in their individual capacities. The complaint asserted claims for race discrimination and retaliation, in violation of R.C. 4112.02(A) and (I). The allegations in the complaint concerned events which occurred while Tanksley was employed by the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch (the "court") as a probation officer.

{¶ 3}    Tanksley, an African American male, has been employed by the court since August 8, 2005. Tanksley works predominately with juvenile probationers. At the times relevant to the present case, Howell was a probation officer supervisor at the court, Mueller was the court's chief probation officer, and Johns served as the court's director.

{¶ 4}    In 2016, Elisa Batchelor was Tanksley's probation officer supervisor. On October 18, 2016, Tanksley filed a grievance with the court's human resources ("HR") department alleging that Batchelor was displaying favoritism and creating a hostile work environment. Tanksley explained that Batchelor would scrutinize notes Tanksley was required to keep on his probationers "more than she did some of [Tanksley's] other counterparts." (Tanksley Depo. at 35.)

{¶ 5}    Danyel Marcus, the court's deputy director of HR, conducted two meetings with Tanksley regarding his October 2016 grievance. At the meetings, Tanksley provided Marcus with some of Batchelor's case note reviews for the probation officers in her unit. The court's HR department reviewed the case notes and determined that, although "there were inconsistencies with the case notes, the policy and how the policy and procedures were administered and audited throughout the entire probation department," there was no evidence to "indicate [Tanksley was] being targeted and/or harassed or that any member in the unit was being favored over the other by Ms. Ba[t]chelor." (Tanksley Depo., Ex. 5.)

{¶ 6}    On April 7, 2017, Tanksley received a written reprimand for insubordination from probation officer supervisor Jan Maloney. Maloney was the supervisor in charge of the electronic monitoring devices ("EMD") used by the probation department. The reprimand asserted Tanksley had submitted an EMD referral form to the probation clerk without a supervisor's signature. Court policy required that "[a]ll referrals are to have a supervisor's signature." (Tanksley Depo., Ex. 6.) Tanksley appealed the written reprimand to Mueller pursuant to the court's employee discipline policy. Mueller upheld the written reprimand on April 21, 2017.

{¶ 7}    On May 1, 2017, Howell became the supervisor for the probation officers in Tanksley's unit. Howell presented the probation officers in the unit with a letter of expectations and asked them to sign the letter. The letter instructed each probation officer to send Howell "an electronic mail or call to inform [him] of [their] arrival and departure" when they were "in the office," and to "send a text at the start and end of [their] day" when

they were "in the field." (Tanksley Depo., Exs. 42, 19.) The letter informed the probation officers they could "be subjected or could possibly face disciplinary actions" if they failed to comply with the expectations stated in the letter. (Tanksley Depo., Ex. 19.) Tanksley signed the letter of expectations on May 1, 2017.

{¶ 8}   On June 7, 2017, Tanksley came into the office and checked in with Howell. Tanksley was wearing his court-issued polo shirt embroidered with the Franklin County court seal. Tanksley contends he told Howell he was going to go to the courtroom to "support [his probationer]. And [Howell] said okay. You can't cover that case in your polo. [Tanksley] was like oh, okay, fine. I'm not going up to cover anyway in a polo, I'm just going up [t]here to support her." (Tanksley Depo. at 48.) Howell claims Tanksley told him he was going to the courtroom to cover the hearing and that Howell "made it clear" to Tanksley he was "not to go in the courtroom with that shirt on." (Howell Depo. at 46-47.) A probation officer "covers" a hearing when they present the court with the "probation update for the youth who is in court." (Bass-Smith Aff. at ¶ 12.)  Tanksley went into the courtroom on June 7, 2017 wearing his polo shirt. Tanksley did not cover the hearing.

{¶ 9}   On June 14, 2017, Howell issued a notice of policy violation to Tanksley for insubordination. The notice stated that Howell informed Tanksley on June 7, 2017 "to not go into the court room due to having [his] court issued field attire on. This directive was based on policy, 'Staff Uniforms/Dress Code.' " (Tanksley Depo., Ex. 9.) The court's dress code "required" probation officers to wear their court-issued polo shirts "while performing duties in the community." (Tanksley Depo., Ex. 16.) The notice further stated that on "Monday June 12th, 2017 [Tanksley] failed to follow the directive of reporting in [at the] start and end of the day" as required by the letter of expectations. (Tanksley Depo., Ex. 9.) Howell checked a box on the notice of policy violation indicating he was requesting a one-day suspension as discipline.

{¶ 10} On June 15, 2017, the court's HR department scheduled a disciplinary hearing to address the allegations contained in the notice of policy violation. On June 16, 2017, Tanksley filed a charge of race and gender discrimination against the court with the Ohio Civil Rights Commission ("OCRC").

{¶ 11} Bradley Martinez served as the hearing officer at the June 27, 2017 disciplinary hearing on the notice of policy violation. Tanksley, Howell, probation officer

supervisor Eddie Stanley, and probation officer Roger Carter testified at the hearing. Tanksley "admitted" during the hearing "that he did not" check in or out with Howell on June 12, 2017. (Tanksley Depo., Ex. 13.) On June 29, 2017, Martinez issued a decision concluding that Tanksley was "insubordinate, by ignoring pointed directives to not wear a polo in court on June 7, 2017, and check in with Mr. Howell at the beginning of his day in the field on June 12, 2017." (Tanksley Depo., Ex. 13.) Martinez noted Tanksley's prior discipline for insubordination and concluded that a one-day suspension without pay was the appropriate discipline for the current infraction. The court's employee discipline policy provided that after an employee had received a written reprimand, an additional violation could result in a suspension without pay.

{¶ 12} Tanksley appealed the hearing officer's decision to court director Johns. Following a hearing, Johns issued a decision upholding the suspension on July 21, 2017. Johns determined that Tanksley had " 'violat[ed] the [dress code] policy that states the uniform/shirt is strictly for "performing duties in the community." ' " Johns noted Tanksley had "admit[ted] that he violated the directive" to check in and out with Howell on June 12, 2017. Johns concluded the "[f]ailure to follow one or both of these directives would cause [him] to support the Hearing Officer's Decision." (Tanksley Depo., Ex. 15.) On July 26, 2017, Mueller informed Tanksley he was to serve his one-day suspension on July 28, 2017.

{¶ 13} On April 5, 2019, defendants filed a motion for summary judgment in the trial court. Defendants asserted they were entitled to immunity from Tanksley's race discrimination claim pursuant to R.C. 2744.03(A)(6). Defendants further asserted Tanksley could not establish a prima facie case of race discrimination or retaliation, and Tanksley's insubordination and prior discipline provided defendants with legitimate, non-discriminatory reasons to suspend Tanksley. Defendants noted that neither Howell nor Mueller had the authority to suspend a probation officer.

{¶ 14} On April 26, 2019, Tanksley filed a memorandum in opposition to defendants' motion for summary judgment. Tanksley asserted defendants were not entitled to immunity on his race discrimination claim, as their discriminatory conduct satisfied the exception to political-subdivision employee immunity in either R.C. 2744.03(A)(6)(a) or (b). Relying on the affidavits he submitted in support of his memorandum in opposition, Tanksley asserted he could establish a prima facie case of race discrimination. Tanksley

further asserted he could establish a prima facie case of retaliation premised on both his October 18, 2016 grievance and his June 16, 2017 OCRC charge. Tanksley alleged that defendants' proffered justifications for the suspension were a pretext for discrimination. Tanksley also noted defendants could each be liable on his claims regardless of who "impose[d] the discipline," as "each played a role, interconnected by the 'chain of command.' " (Memo. In Opposition at 12.)

{¶ 15} On May 3, 2019, defendants filed a reply in support of their motion for summary judgment and a motion to strike. The motion to strike asked the court to strike certain paragraphs from the affidavits Tanksley had submitted.

{¶ 16} On July 3, 2019, the common pleas court issued a decision and judgment entry granting defendants' motion for summary judgment and motion to strike. The court concluded there were genuine issues of material fact regarding whether defendants' alleged discriminatory conduct satisfied the R.C. 2744.03(A)(6)(b) exception to political-subdivision employee immunity. The court determined Tanksley could not establish a prima facie case of race discrimination, as he had not identified a similarly situated non-protected individual who received more favorable treatment than he did. The court noted the only protected activity at issue in Tanksley's retaliation claim was his June 16, 2017 OCRC charge, and determined there was no evidence of a causal link between Tanksley's suspension and the OCRC charge. The court concluded Tanksley failed to present any evidence demonstrating the reasons proffered by defendants for suspending Tanksley were a pretext for discrimination.

{¶ 17} Tanksley appeals, presenting the following sole assignment of error for our review:

> The trial court erred in granting Defendants' Motion for Summary Judgment.

{¶ 18} Summary judgment is appropriate when the moving party demonstrates : (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the non-moving party, and that conclusion is adverse to the non-moving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29, citing *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Appellate review of

a trial court's ruling on a motion for summary judgment is de novo. *Id.* at ¶ 29. As such, the court of appeals independently reviews the record and affords no deference to the trial court's decision. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 19} When seeking summary judgment on grounds the non-moving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the non-moving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the non-moving party has no evidence to support its claims. *Id.* If the moving party meets its burden, then the non-moving party has a reciprocal burden to set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the non-moving party does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. *Id.*

{¶ 20} Tanksley asserts the trial court erred in granting defendants summary judgment on his claims for race discrimination and retaliation. R.C. 4112.02(A) provides that "[i]t shall be an unlawful discriminatory practice * * * [f]or any employer,[1] because of the race * * * of any person, to * * * discriminate against that person with respect to hire,

---

[1] Tanksley brought suit against Howell, Mueller, and Johns individually; Tanksley did not file suit against the court. R.C. 4112.01(A)(2) defines an "employer" as including "any person acting directly or indirectly in the interest of an employer." In *Genaro v. Cent. Transp.*, 84 Ohio St.3d 293 (1999), the Supreme Court of Ohio concluded that individual supervisors or managers could be held "jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor/manager in violation of R.C. Chapter 4112." *Id.* at syllabus. In *Hauser v. Dayton Police Dept.*, 140 Ohio St.3d 268, 2014-Ohio-3636, the Supreme Court held "R.C. 4112.01(A)(2) and 4112.02(A) do not expressly impose civil liability on political-subdivision employees so as to exempt them from immunity under R.C. 2744.03(A)(6)(c)." *Id.* at ¶ 15. The *Hauser* court acknowledged its reasoning "call[ed] the *Genaro* majority's reasoning into question," but concluded that it was not obligated to overrule *Genaro*, as *Genaro* did not "squarely address" the immunity question at issue in *Hauser. Hauser* at ¶ 17. Although some federal courts have called the validity of *Genaro* into question following *Hauser*, *Genaro* remains binding authority on this court. *See Parker v. Strawser Constr., Inc.*, 307 F.Supp.3d 744, 752 (S.D.Ohio 2018); *Longoria v. Autoneum N. Am., Inc.*, N.D. Ohio No. 3:14CV2648 (Oct. 30, 2015). Tanksley did not appeal the common pleas court's ruling on R.C. 2744.03(A)(6)(b), and *Hauser* addressed only the R.C. 2744.03(A)(6)(c) exception to immunity. Accordingly, for purposes of this opinion, we presume Tanksley's race discrimination claim was properly filed against the defendants individually.

tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. 4112.02(I) makes it an unlawful discriminatory practice for "any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section" or "because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code." Employment discrimination and retaliation claims under R.C. 4112.02(A) and (I) are generally to be interpreted in accordance with federal case law interpreting Title VII of the Civil Rights Act of 1964. *Grubach v. Univ. of Akron*, 10th Dist. No. 19AP-283, 2020-Ohio-3467, ¶ 48; *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St.3d 607, 609-10 (1991); *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981).

{¶ 21} In order to prevail in an employment discrimination case, a plaintiff must prove discriminatory intent and may establish such intent through either direct or indirect methods of proof. *Ricker v. John Deere Ins. Co.*, 133 Ohio App.3d 759, 766 (10th Dist.1998), citing *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996). A plaintiff may prove discriminatory intent indirectly through the analysis established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Veal v. Upreach, LLC*, 10th Dist. No. 11AP-192, 2011-Ohio-5406, ¶ 20, citing *Mauzy* at 584.

{¶ 22} The first step in the *McDonnell Douglas* analysis requires the plaintiff to establish a prima facie case of discrimination. *Plumbers & Steamfitters* at 197. In order to establish a prima facie case, a plaintiff must demonstrate that he or she: (1) is a member of a protected class, (2) suffered an adverse employment action, (3) was qualified for the position in question, and (4) was replaced by someone outside of the protected class or that the employer treated a similarly situated, non-protected person more favorably. *Veal* at ¶ 21, citing *McDonnell Douglas* at 802; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 15. Establishing a prima facie case "creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

{¶ 23} If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate some legitimate, non-discriminatory reason for its action. *Veal* at

¶ 21, citing *McDonnell Douglas* at 802. The explanation offered must be legally sufficient to justify a judgment for the defendant. *Burdine* at 255. If the employer articulates a legitimate non-discriminatory reason for its action, the burden shifts back to the plaintiff to show the proffered reason was not the true reason for the adverse employment action, but was a pretext for discrimination. *Veal* at ¶ 21, citing *Burdine* at 253. "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." (Emphasis sic.) *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). A plaintiff may establish that the employer's proffered reason for the adverse employment action is a pretext for discrimination by demonstrating that the stated reason had no basis in fact, the reason offered was not the actual reason for the employment action, or that the reason offered was insufficient to explain the employer's action. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

{¶ 24} However, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine* at 253. "The *McDonnell Douglas* division of intermediate evidentiary burdens serves to bring the litigants and the court expeditiously and fairly to this ultimate question." *Id.*

{¶ 25} We need not resolve whether Tanksley has established a prima facie case of race discrimination, as Tanksley fails to adduce evidence to support his ultimate burden to demonstrate that he was suspended because of his race. *See Kirkland v. James*, 657 Fed.Appx. 580, 585 (6th Cir.2016) (noting that "[u]nder the facts of this case, however, we need not resolve whether [the plaintiff] made a prima facie case of discrimination * * * because her claims fail at step three—she has not shown that [her employer's] neutral reasons for reducing her leave hours were pretextual"); *Equal Emp. Opportunity Comm. v. Lucent Techs., Inc.*, 226 Fed.Appx. 587, 591 (6th Cir.2007) (finding no need to address the plaintiff's prima facie case as the plaintiff's discrimination "case [did] not survive on the question of pretext").

{¶ 26} Defendants proffer two reasons for Tanksley's suspension: Tanksley's failure to comply with Howell's directive not to wear his polo shirt into the courtroom on June 7, 2017, and Tanksley's failure to comply with Howell's directive to check in and out on June 12, 2017. (Appellees' Brief at 16.) The employer's burden to set forth legitimate, non-

discriminatory reasons for the employment action "is one of production (not persuasion)." *Boyd v. Ohio Dept. of Mental Health*, 10th Dist. No. 10AP-906, 2011-Ohio-3596, ¶ 27, citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). An employer sustains its burden of production if it presents "evidence which, *taken as true*, would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." (Emphasis sic.) *Hicks* at 509. Accepting defendants' asserted reasons as true they permit the conclusion that defendants possessed non-discriminatory reasons for the suspension. The court's employee handbook specifies that "[i]nsubordination" constitutes a "violation of the Court's work rules and may be subject to disciplinary action." (Mueller Depo., Ex. A.) *See Black's Law Dictionary* 814 (8th Ed.2004) (defining "insubordination" as a "willful disregard of an employer's instructions").

{¶ 27} Tanksley asserts defendants' first proffered reason is factually false, as Howell never told Tanksley that he could not wear his polo shirt into the courtroom on June 7, 2017. However, Johns determined that Tanksley's conduct violated the court's dress code, not Howell's alleged verbal directive. Johns noted in the appeal decision that Howell gave Tanksley a "clear directive," but that in "Tanksley's opinion the directive was ambiguous which led to [Tanksley] entering the courtroom in the non-approved attire." (Tanksley Depo., Ex. 15.) Johns explained at his deposition that as both Howell and Tanksley "felt that their directive was clear," Johns "did not find that [he] had enough information to support [Howell's] decision on discipline for [Tanksley] wearing the * * * shirt in the courtroom." (Johns Depo. at 47, 38.)

{¶ 28} Tanksley asserts Johns' appeal decision "falsely describes the court's Dress Code policy," as the dress code did not expressly prohibit probation officers from wearing their polo shirts in the courtroom. (Appellant's Reply Brief at 18.) However, we need not address the precise requirements of the dress code policy, since Johns determined that Tanksley's "failure to follow one or both" of the directives at issue in the appeal would cause Johns to uphold the suspension. (Tanksley Depo., Ex. 15.) Thus, Johns' decision held that Tanksley's failure to check in and out on June 12, 2017 was a sufficient reason to uphold the suspension independent from the polo shirt issue.

{¶ 29} "When an employer offers more than one independent, legitimate, non-discriminatory reason for an adverse employment action, even if one is found to be

pretextual but at least one other is not, the defendant employer is still entitled to summary judgment." *Jones v. St. Jude Med. S.C., Inc.*, 504 Fed.Appx. 473, 477-78 (6th Cir.2012). *Accord Wilson v. Cleveland Clinic Found.*, 579 Fed.Appx. 392 402 (6th Cir.2014); *Crawford v. Fairburn*, 482 F.3d 1305 (11th Cir.2007); *Cooper v. Wal-Mart Stores, Inc.*, 296 Fed.Appx. 686, 691 (10th Cir.2008) (noting that "if the employer offers one reason which, standing alone, would have caused it to terminate the plaintiff, then debunking the employer's other reasons will not defeat summary judgment"). "[W]hen the proffered reasons are independent of each other, 'the falsity or incorrectness of one may not impeach the credibility of the remaining reason(s).' " *Jones* at 478, quoting *Sims v. Cleland*, 813 F.2d 790, 793 (6th Cir.1987). *Compare Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir.1995) (holding that "[t]here may be cases in which the multiple grounds offered by the defendant for the adverse action of which the plaintiff complains are so intertwined, or the pretextual character of one of them so fishy and suspicious, that the plaintiff could withstand summary judgment").

{¶ 30} Tanksley contends that Howell's decision to include the check in and out violation in the notice of policy violation was a pretext for discrimination. But he points to nothing in the record that contradicts the trial court's observation that Tanksley "presented no evidence to suggest that his [earlier] insubordination did not actually motivate Defendants to discipline him, and cannot name any other probation officer outside the protected class who engaged in the same conduct (violating directives of their superior) and was not disciplined." (Decision at 10.) And Tanksley affirmed he did not believe the ultimate decisionmaker, Johns, "made his conclusions and his decisions because [Tanksley is] an African American." (Tanksley Depo. at 134.)

{¶ 31} "[W]hen 'an employee challenges his termination as improperly motivated by a supervisor's discriminatory animus and then seeks to impute that animus to the neutral decisionmaker who ultimately terminated the employee,' the plaintiff 'must offer evidence that the supervisor's racial animus was the cause of the termination or somehow influenced the ultimate decisionmaker.' " *Harris v. Giant Eagle, Inc.*, 133 Fed.Appx. 288, 295 (6th Cir.2005), quoting *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 877 (6th Cir.2001). Known as a "cat's paw" theory of liability, the plaintiff must demonstrate the "biased subordinate, who lack[ed] decisionmaking power, use[d] the unbiased decisionmaker as a

dupe in a deliberate scheme to trigger a discriminatory or retaliatory employment action." *Smith v. Ohio Dept. of Pub. Safety*, 10th Dist. No. 12AP-1073, 2013-Ohio-4210, ¶ 55, citing *Equal Emp. Opportunity Comm. v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir.2006). If the decisionmaker conducts an "independent investigation" into the allegations and " 'determin[es] that the adverse action was, apart from the supervisor's recommendation, entirely justified,' " the decisionmaker's "independent evaluation of the situation" defeats a cat's paw claim. *Marshall v. Rawlings Co. LLC*, 854 F.3d 368, 380 (6th Cir.2017), quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011).

{¶ 32} Martinez and Johns both held hearings on the alleged violations where they heard testimony from Tanksley, Howell, Stanley, and Carter. Tanksley affirmed that he was able to "present all of the information that [he] wanted to present" at the disciplinary hearing. (Tanksley Depo. at 125.) *See Cariglia v. Hertz Equip. Rental Corp.*, 363 F.3d 77, 87 (1st Cir.2004), fn. 4. Although Howell testified at the hearings, there is no evidence indicating that Howell's recommendation drove either Martinez's or Johns' decisions. *See Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 970 (8th Cir.2017) (finding that, although the supervisors "participated in the investigations and testified at the disciplinary hearings," there was no evidence indicating that the supervisors influenced the discharge decisions). *Compare Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 353 (6th Cir.2012) (finding genuine issues of material fact in a cat's paw claim where a biased human resources manager "actively inserted himself in the decisionmaking process" and "misinformed and selectively informed" the decisionmakers about the incident in question).

{¶ 33} Johns reviewed the evidence and came to his own independent conclusions regarding the policy violations at issue in the case. Regarding the check in and out directive, Johns observed that the directive was contained in the letter of expectations and Tanksley admitted he violated the directive. Johns noted that Tanksley "verbally told [him]" he did not check in or out on June 12, 2017. (Johns Depo. at 61.) Thus, Johns independently concluded that Tanksley's violation of the check in and out requirement was a sufficient reason to uphold suspension. *See Wilson v. Stroh Cos.*, 952 F.2d 942, 946 (6th Cir.1992) (concluding that, although the plant manager who may have harbored racial animus toward the plaintiff "brought [plaintiff's] misconduct to [the general manager's] attention," such

evidence was insufficient to establish a claim of race discrimination since the general manager fired the plaintiff following an "independent investigation of the events").

{¶ 34} There is no indication in the record that Tanksley's failure to check in or out on June 12, 2017 had no basis in fact, was not the actual reason Johns upheld the suspension, or was insufficient to explain the suspension. As such, Tanksley fails to establish that Johns' reliance on the check in and out violation as a basis for the suspension was a pretext for discrimination.

{¶ 35} Viewing the evidence most strongly in favor of Tanksley, reasonable minds could only conclude that Tanksley was not suspended because of his race. As such, the common pleas court did not err in granting defendants summary judgment on Tanksley's race discrimination claim.

{¶ 36} Absent direct evidence of retaliation, a plaintiff may establish an inference of retaliation using the burden-shifting framework promulgated in *McDonnell Douglas*. *Nebozuk v. Abercrombie & Fitch Co.*, 10th Dist. No. 13AP-591, 2014-Ohio-1600, ¶ 40, citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir.2008). A plaintiff establishes a prima facie case of retaliation by demonstrating that: (1) the plaintiff engaged in a protected activity, (2) the defendant was aware of the protected activity, (3) the defendant took an adverse employment action against the plaintiff, and (4) that a causal link exists between the protected activity and the adverse action. *Reid v. Plainsboro Partners, III*, 10th Dist. No. 09AP-442, 2010-Ohio-4373, ¶ 56, citing *Woods v. Capital Univ.*, 10th Dist. No. 09AP-166, 2009-Ohio-5672, ¶ 45; *Greer-Burger v. Temesi*, 116 Ohio St.3d 324, 2007-Ohio-6442, ¶ 13.

{¶ 37} If a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for its actions. *Lindsay v. Yates*, 578 F.3d 407, 414-15 (6th Cir.2009); *Imwalle* at 544. If the defendant carries this burden of production, the burden then shifts back to the plaintiff to demonstrate that the reason proffered by the defendant was not the true reason for the employment decision, but was a pretext for discrimination. *Lindsay* at 415; *Imwalle* at 544.

{¶ 38} Tanksley contends that both his October 18, 2016 grievance and his June 16, 2017 OCRC charge constituted protected activity. "An employee's activity is 'protected' for purposes of R.C. 4112.02(I) if the employee has 'opposed any unlawful discriminatory

practice' (the 'opposition clause') or 'made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under sections 4112.01 to 4112.07 of the Revised Code' (the 'participation clause')." *Veal* at ¶ 18, quoting *HLS Bonding v. Ohio Civ. Rights Comm.*, 10th Dist. No. 07AP-1071, 2008-Ohio-4107, ¶ 15. Tanksley asserts his October 18, 2016 grievance amounted to protected activity because the grievance opposed Batchelor's racially motivated favoritism.

**{¶ 39}** " 'In order to engage in a protected opposition activity * * * a plaintiff must make an overt stand against suspected illegal discriminatory action.' " *Jackson v. Champaign Natl. Bank & Trust Co.*, 10th Dist. No. 00AP-170 (Sept. 26, 2000), quoting *Comiskey v. Automotive Industry Action Group*, 40 F.Supp.2d 877, 898 (E.D.Mich.1999). While "[m]agic words are not required," opposition activity "must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. UPS*, 406 Fed.Appx. 837, 840 (5th Cir.2010). Thus, an employee " 'has to at least say something to indicate her [race] is an issue. An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints.' " *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 727 (7th Cir.2003), quoting *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1008 (7th Cir.2000). *See Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 193 (3d Cir.2015); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir.1989). "General complaints of unfair treatment not stemming from racial animus or some other form of discrimination are not protected activity" under R.C. Chapter 4112. *Kiehl v. Univ. Hosps. Health Sys.-Heather Hill, Inc.*, N.D. Ohio No. 1:08 CV 763 (June 4, 2009). *Accord Canady* at ¶ 41-42.

**{¶ 40}** Tanksley's October 18, 2016 grievance stated that Batchelor was targeting him and "search[ing] for unsubstantiated issues with [his] job performance," when there were "other workers within [the] unit that [were] not in compliant [sic] with court policy, when it comes to case notes." The grievance indicated that Batchelor was "rude" and "harassing" toward Tanksley. (Tanksley Depo., Ex. 4.)  However, the grievance does not indicate that Batchelor's conduct toward Tanksley was premised on his race or some other protected category. Tanksley admitted at his deposition that the October 2016 grievance

did not state "that [Batchelor] was discriminating against [him] because [he was an] African American male." (Tanksley Depo. at 57.)

{¶ 41} Tanksley contends he informed the court's HR department that "Batchelor was treating him differently than the white Probation Officer," S.G. (Appellant's Brief at 22.) Tanksley explained at his deposition that he believed Batchelor favored S.G. because "[h]e's a white male." (Tanksley Depo. at 204.) Yet, Tanksley testified as follows regarding his meetings with HR concerning the grievance:

> Q. And in your meetings [with HR], whether or not they occurred on the 25th or 28th of October, whenever those two meetings occurred with [Marcus] present, do you recall whether you ever said to [Marcus] that you believed [Batchelor] was treating you differently because you are an African American male?
>
> A. No, I don't remember saying that to her.

(Tanksley Depo. at 87.) Tanksley also affirmed the "first time [he] opposed a discriminatory practice by the court [was] when [he] filed [his] civil rights charge." (Tanksley Depo. at 212.)

{¶ 42} Thus, Tanksley's discussions with the court's HR department regarding his October 18, 2016 grievance did not alert the court that unlawful discrimination was at issue. Although Tanksley may have believed Batchelor's alleged favoritism was racially motivated, there is nothing in the record indicating Tanksley communicated that belief to his employer. As such, the October 18, 2016 grievance did not amount to protected activity. *See Jackson* (finding the appellant's letter to the bank's human resources officer did not constitute protected activity, as the appellant merely made "vague references to gender, comparing her performance to that of the male lenders in her office," but the letter did not "alert the bank that [the] appellant believed she was being treated unfairly because of her gender"); *Coch v. GEM Indus.*, 6th Dist. No. L-04-1357, 2005-Ohio-3045, ¶ 33.

{¶ 43} Tanksley's June 16, 2017 charge of unlawful discrimination before the OCRC constituted protected activity. *See HLS Bonding* at ¶ 21. However, Howell issued the notice of policy violation on June 14, 2017, two days before Tanksley filed the OCRC charge. *See Thomas v. AT&T Servs.*, 933 F.Supp.2d 954, 969 (N.D.Ohio 2013) (noting that "any [employer] activity that pre-dates Plaintiff's [protected activity] cannot, as a matter of law, serve as the basis for Plaintiff's retaliation claim"). Mueller did not possess any discretion

regarding the decision to suspend Tanksley, and thus did not take an adverse employment action against Tanksley. *See Williams v. Gen. Elec. Co.*, 269 F.Supp.2d 958, 970 (S.D.Ohio 2003), citing *Genaro v. Cent. Transp.*, 84 Ohio St.3d 293, 300 (1999) (noting that "[i]ndividual liability under Ohio Revised Code Chapter 4112 extends only to an individual's own actions, and therefore, only to direct supervisors or supervisors who played a direct role in making an employment decision"). Accordingly, neither Howell nor Mueller could be liable on Tanksley's retaliation claim.

{¶ 44} Johns did take an adverse employment action against Tanksley. Johns also worked with the court's attorney to help her "get an understanding of the situation" at issue in Tanksley's OCRC charge. (Johns Depo. at 54.) Although Johns could not recall the precise time he worked with the court's attorney, the evidence could support an inference that Johns was aware of Tanksley's OCRC charge when he issued the appeal decision. *See Proffitt v. Metro. Govt. of Nashville & Davidson Cty., Tenn.*, 150 Fed.Appx. 439, 442-43 (6th Cir.2005), quoting *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir.2002) (noting that " 'a plaintiff may survive summary judgment by producing circumstantial evidence to establish' " that the defendant was aware of protected activity in a retaliation case).

{¶ 45} Tanksley, however, relies solely on the temporal proximity between his June 16, 2017 OCRC charge and Johns' July 21, 2017 appeal decision to demonstrate the causal connection element of his prima facie case. Ohio courts have held that "although the timing of an employee's termination can contribute to an inference of retaliation to meet the causal connection element * * *, ' "temporal proximity alone is insufficient to support a finding of a causal connection" ' even with respect to a prima facie case." *Sells v. Holiday Mgt.*, 10th Dist. No. 11AP-205, 2011-Ohio-5974, ¶ 35, quoting *Cunningham v. Steubenville Orthopedics & Sports Med., Inc.*, 175 Ohio App.3d 627, 2008-Ohio-1172, ¶ 73 (7th Dist.), quoting *Buehler v. AmPam Commercial Midwest*, 1st Dist. No. C-060475, 2007-Ohio-4708, ¶ 25.

{¶ 46} There are federal courts which find temporal proximity alone sufficient to demonstrate the causal connection element of a retaliation prima facie case. *Clark Cty. School Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001), quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir.2001) (observing the cases that "accept mere temporal proximity * * * as sufficient evidence of causality to establish a prima facie case uniformly

hold that the temporal proximity must be 'very close' "); *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir.2008). However, the courts which recognize mere temporal proximity as evidence of a causal connection also recognize that where "timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir.2001). *Accord Verma v. Univ. of Pennsylvania*, 533 Fed.Appx. 115, 119 (3d Cir.2013) (noting that although temporal proximity may satisfy the causal link element of a prima facie retaliation claim, the Third Circuit "has declined to infer such a causal link where an employee's negative performance evaluations pre-dated any protected activity"); *Hervey v. Cty. of Koochiching*, 527 F.3d 711, 723 (8th Cir.2008), quoting *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir.2002) (holding that " '[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity' "); *Warren v. Ohio Dept. of Pub. Safety*, 24 Fed.Appx. 259, 266 (6th Cir.2001) (noting that "[e]mployers need not suspend previously contemplated employment actions upon learning of protected activity by the employee"); *Dabney v. Christmas Tree Shops*, 958 F.Supp.2d 439, 456 (S.D.N.Y.2013).

{¶ 47} The events giving rise to Johns' appeal decision pre-dated Tanksley's June 16, 2017 OCRC charge. Indeed, the incidents addressed in Howell's June 14, 2017 notice of policy violation occurred on June 7 and 12, 2017. Moreover, it was Tanksley's April 2017 written reprimand for insubordination which enhanced the discipline applicable to the June 2017 infraction to a suspension without pay. Accordingly, even if mere temporal proximity was sufficient to establish the causal connection element, Tanksley could not rely solely on temporal proximity in the present case. As such, Tanksley fails to demonstrate a causal connection between his OCRC charge and Johns' appeal decision.

{¶ 48} Thus, even viewing the evidence in a light most favorable to Tanksley, he fails to establish a prima facie case of retaliation with respect to Howell, Mueller, or Johns. As such, we need not proceed further under the *McDonnell Douglas* burden-shifting analysis. *Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 42; *Equal Emp. Opportunity Comm. v. Sundance Rehab. Corp.*, 466 F.3d 490, 503 (6th Cir.2006).

The common pleas court properly granted defendants summary judgment on Tanksley's retaliation claim.

{¶ 49} As the common pleas court properly granted defendants' motion for summary judgment, Tanksley's sole assignment of error is overruled. Having overruled Tanksley's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

LUPER SCHUSTER and NELSON, JJ., concur.

_____